# PULLMAN'S PALACE CAR COMPANY *v.* PENN-SYLVANIA.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 1. Argued October 18, 1888. — Reargument ordered November 5, 1888. — Reargued March 6, 1890. — Decided May 25, 1891.

A statute of a State, imposing a tax on the capital stock of all corporations engaged in the transportation of freight or passengers within the State, under which a corporation of another State, engaged in running railroad cars into, through and out of the State, and having at all times a large number of such cars within the State, is taxed by taking as the basis of assessment such proportion of its capital stock as the number of miles of

railroad over which its cars are run within the State bears to the whole number of miles in this and other States over which its cars are run, does not, as applied to such a corporation, violate the clause of the Constitution of the United States granting to Congress the power to regulate commerce among the several States.

THIS was an action brought by the State of Pennsylvania against Pullman's Palace Car Company, a corporation of Illinois, in the Court of Common Pleas of the county of Dauphin in the State of Pennsylvania, to recover the amount of a tax settled by the auditor general and approved by the treasurer of that State, for the years 1870 to 1880 inclusive, on the defendant's capital stock, taking as the basis of assessment such proportion of its capital stock as the number of miles of railroad over which cars were run by the defendant in Pennsylvania bore to the whole number of miles in this and other States over which its cars were run.

All these taxes were levied under successive statutes of Pennsylvania, imposing taxes on capital stock of corporations, incorporated by the laws of Pennsylvania or of any other State, and doing business in Pennsylvania, computed on a certain percentage of dividends made or declared. The taxes for 1870–1874 were levied under the statute of May 1, 1868, c. 69, § 5, which applied to corporations of every kind, with certain exceptions not material to this case, and fixed the amount of the tax at half a mill on every one per cent of dividend. Penn. Laws, 1868, p. 109. The taxes for 1875–1877 were levied under the statute of April 24, 1874, c. 31, § 4, which applied to all corporations in any way engaged in the transportation of freight or passengers, and fixed the tax at nine-tenths of a mill on every one per cent of dividend. Penn. Laws, 1874, p. 70. The taxes for 1878–1880 were levied under the statutes of March 20, 1877, c. 5, § 3, and of June 7, 1879, c. 122, § 4, applicable to all corporations, except building associations, banks, savings institutions and foreign insurance companies, and fixing the tax at half a mill on each one per cent of dividend of six per cent or more on the par value of the capital stock, and, when the dividend was less, at three mills on a valuation of the capital stock. Penn. Laws, 1877, p. 8; 1879, p. 114.

A trial by jury was waived, and the case submitted to the decision of the court, which found the following facts: "The defendant is a corporation of the State of Illinois, having its principal office in Chicago. Its business was, during all the time for which tax is charged, to furnish sleeping coaches and parlor and dining-room cars to the various railroad companies with which it contracted on the following terms: The defendant furnished the coaches and cars, and the railroad companies attached and made them part of their trains, no charge being made by either party against the other. The railroad companies collected the usual fare from passengers who travelled in their coaches and cars, and the defendant collected a separate charge for the use of the seats, sleeping berths and other conveniences. Business has been carried on continuously by the defendant in this way in Pennsylvania since February 17, 1870, and it has had about one hundred coaches and cars engaged in this way in the State during that time. The cars used in this State have, during all the time for which tax is charged, been running into, through and out of this State."

Upon these facts the court held "that the proportion of the capital stock of the defendant invested and used in Pennsylvania is taxable under these acts; and that the amount of the tax may be properly ascertained by taking as a basis the proportion which the number of miles operated by the defendant in this State bears to the whole number of miles operated by it, without regard to the question where any particular car or cars were used;" and therefore gave judgment for the State.

That judgment was affirmed, upon writ of error, by the Supreme Court of the State, for reasons stated in its opinion as follows: "We think it very clear that the plaintiff in error is engaged in carrying on such a business within this commonwealth, as to subject it to the statutes imposing taxation. While the tax on the capital stock of a company is a tax on its property and assets, yet the capital stock of a company and its property and assets are not identical. The coaches of the company are its property. They are operated within this State. They are daily passing from one end of the State to the other. They are used in performing the functions for

which the corporation was created. The fact that they also are operated in other States cannot wholly exempt them from taxation here. It reduces the value of the property in this State, justly subject to taxation here. This was recognized in the court below, and we think the proportion was fixed according to a just and equitable rule." 107 Penn. St. 156, 160.

Pullman's Palace Car Company sued out a writ of error from this court, and filed six assignments of error, the substance of which was summed up in the brief of its counsel as follows: "The court erred in holding that any part of the capital stock of the Pullman Company was subject to taxation by the State of Pennsylvania by reason of its running any of its cars into, out of, or through the State of Pennsylvania in the course of their employment in the interstate transportation of railway passengers.".

*Mr. Edward S. Isham* and *Mr. William Barry* argued for the plaintiff in error at the argument on the 18th of October, 1888.

*Mr. Edward S. Isham* and *Mr. John S. Runnells* argued for the plaintiff in error at the argument on the 6th of March, 1890.

*Mr. W. S. Kirkpatrick,* Attorney General of the State of Pennsylvania, argued for the defendant in error at both arguments. *Mr. John F. Sanderson,* Deputy Attorney General of that State, was with him on the brief in both cases.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

Upon this writ of error, whether this tax was in accordance with the law of Pennsylvania is a question on which the decision of the highest court of the State is conclusive. The only question of which this court has jurisdiction is whether the tax was in violation of the clause of the Constitution of the United States granting to Congress the power to regulate

commerce among the several States. The plaintiff in error contends that its cars could be taxed only in the State of Illinois, in which it was incorporated and had its principal place of business.

No general principles of law are better settled, or more fundamental, than that the legislative power of every State extends to all property within its borders, and that only so far as the comity of that State allows can such property be affected by the law of any other State. The old rule, expressed in the maxim *mobilia sequuntur personam*, by which personal property was regarded as subject to the law of the owner's domicil, grew up in the Middle Ages, when movable property consisted chiefly of gold and jewels, which could be easily carried by the owner from place to place, or secreted in spots known only to himself. In modern times, since the great increase in amount and variety of personal property, not immediately connected with the person of the owner, that rule has yielded more and more to the *lex situs*, the law of the place where the property is kept and used. *Green* v. *Van Buskirk*, 5 Wall. 307, and 7 Wall. 139; *Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664; *Harkness* v. *Russell*, 118 U. S. 663, 679; *Walworth* v. *Harris*, 129 U. S. 355; Story on Conflict of Laws, § 550; Wharton on Conflict of Laws, §§ 297–311. As observed by Mr. Justice Story, in his commentaries just cited, " although movables are for many purposes to be deemed to have no situs, except that of the domicil of the owner, yet this being but a legal fiction, it yields, whenever it is necessary for the purpose of justice that the actual situs of the thing should be examined. A nation within whose territory any personal property is actually situate has an entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situate there."

For the purposes of taxation, as has been repeatedly affirmed by this court, personal property may be separated from its owner; and he may be taxed, on its account, at the place where it is, although not the place of his own domicil, and even if he is not a citizen or a resident of the State which imposes the tax. *Lane County* v. *Oregon*, 7 Wall. 71, 77; *Railroad Co.*

v. *Pennsylvania*, 15 Wall. 300, 323, 324, 328; *Railroad Co.* v. *Peniston*, 18 Wall. 5, 29; *Tappan* v. *Merchants' Bank*, 19 Wall. 490, 499; *State Railroad Tax Cases*, 92 U. S. 575, 607, 608; *Brown* v. *Houston*, 114 U. S. 622; *Coe* v. *Errol*, 116 U. S. 517, 524; *Marye* v. *Baltimore & Ohio Railroad*, 127 U. S. 117, 123.

It is equally well settled that there is nothing in the Constitution or laws of the United States which prevents a State from taxing personal property, employed in interstate or foreign commerce, like other personal property within its jurisdiction. *Delaware Railroad Tax*, 18 Wall. 206, 232; *Telegraph Co.* v. *Texas*, 105 U. S. 460, 46.; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 206, 211; *Western Union Telegraph Co.* v. *Attorney General of Massachusetts*, 125 U. S. 530, 549; *Marye* v. *Baltimore & Ohio Railroad*, 127 U. S. 117, 124; *Leloup* v. *Mobile*, 127 U. S. 640, 649.

Ships or vessels, indeed, engaged in interstate or foreign commerce upon the high seas, or other waters which are a common highway, and having their home port, at which they are registered under the laws of the United States, at the domicil of their owners in one State, are not subject to taxation in another State at whose ports they incidentally and temporarily touch for the purpose of delivering or receiving passengers or freight. But that is because they are not, in any proper sense, abiding within its limits, and have no continuous presence or actual situs within its jurisdiction, and, therefore, can be taxed only at their legal situs, their home port and the domicil of their owners. *Hays* v. *Pacific Mail Steamship Co.*, 17 How. 596; *St. Louis* v. *Ferry Co.*, 11 Wall. 423; *Morgan* v. *Parham*, 16 Wall. 471; *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196.

Between ships and vessels, having their situs fixed by act of Congress, and their course over navigable waters, and touching land only incidentally and temporarily; and cars or vehicles of any kind, having no situs so fixed, and traversing the land only, the distinction is obvious. As has been said by this court. "Commerce on land between the different

States is so strikingly dissimilar, in many respects, from commerce on water, that it is often difficult to regard them in the same aspect in reference to the respective constitutional powers and duties of the State and Federal governments. No doubt commerce by water was principally in the minds of those who framed and adopted the Constitution, although both its language and spirit embrace commerce by land as well. Maritime transportation requires no artificial roadway. Nature has prepared to hand that portion of the instrumentality employed. The navigable waters of the earth are recognized public highways of trade and intercourse. No franchise is needed to enable the navigator to use them. Again, the vehicles of commerce by water being instruments of intercommunication with other nations, the regulation of them is assumed by the national legislature. So that state interference with transportation by water, and especially by sea, is at once clearly marked and distinctly discernible. But it is different with transportation by land." *Railroad Co.* v. *Maryland,* 21 Wall. 456, 470.

In *Gloucester Ferry Co.* v. *Pennsylvania,* on which the plaintiff in error much relies, the New Jersey corporation taxed by the State of Pennsylvania, under one of the statutes now in question, had no property in Pennsylvania except a lease of a wharf at which its steamboats touched to land and receive passengers and freight carried across the Delaware River; and the difference in the facts of that case and of this, and in the rules applicable, was clearly indicated in the opinion of the court as follows: "It is true that the property of corporations engaged in foreign or interstate commerce, as well as the property of corporations engaged in other business, is subject to taxation, provided always it be within the jurisdiction of the State." 114 U. S. 206. "While it is conceded that the property in a State belonging to a foreign corporation engaged in foreign or interstate commerce may be taxed equally with like property of a domestic corporation engaged in that business, we are clear that a tax or other burden imposed on the property of either corporation because it is used to carry on that commerce, or upon the transportation

of persons or property, or for the navigation of the public waters over which the transportation is made, is invalid and void, as an interference with, and an obstruction of, the power of Congress in the regulation of such commerce." 114 U. S. 211.

Much reliance is also placed by the plaintiff in error upon the cases in which this court has decided that citizens or corporations of one State cannot be taxed by another State for a license or privilege to carry on interstate or foreign commerce within its limits. But in each of those cases the tax was not upon the property employed in the business, but upon the right to carry on the business at all, and was therefore held to impose a direct burden upon the commerce itself. *Moran* v. *New Orleans*, 112 U. S. 69, 74; *Pickard* v. *Pullman's Southern Car Co.*, 117 U. S. 34, 43; *Robbins* v. *Shelby Taxing District*, 120 U. S. 489, 497; *Leloup* v. *Mobile*, 127 U. S. 640, 644. For the same reason, a tax upon the gross receipts derived from the transportation of passengers and goods between one State and other States or foreign nations has been held to be invalid. *Fargo* v. *Michigan*, 121 U. S. 230; *Philadelphia & Southern Steamship Co.* v. *Pennsylvania*, 122 U. S. 326.

The tax now in question is not a license tax or a privilege tax; it is not a tax on business or occupation; it is not a tax on, or because of, the transportation, or the right of transit, of persons or property through the State to other States or countries. The tax is imposed equally on corporations doing business within the State, whether domestic or foreign, and whether engaged in interstate commerce or not. The tax on the capital of the corporation, on account of its property within the State, is, in substance and effect, a tax on that property. *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 209; *Western Union Telegraph Co.* v. *Attorney General of Massachusetts*, 125 U. S. 530, 552. This is not only admitted, but insisted on, by the plaintiff in error.

The cars of this company within the State of Pennsylvania are employed in interstate commerce; but their being so employed does not exempt them from taxation by the State; and the State has not taxed them because of their being so employed, but because of their being within its territory and

jurisdiction. The cars were continuously and permanently employed in going to and fro upon certain routes of travel. If they had never passed beyond the limits of Pennsylvania, it could not be doubted that the State could tax them, like other property, within its borders, notwithstanding they were employed in interstate. commerce. The fact that, instead of stopping at the state boundary, they cross that boundary in going out and coming back, cannot affect the power of the State to levy a tax upon them. The State, having the right, for the purposes of taxation, to tax any personal property found within its jurisdiction, without regard to the place of the owner's domicil, could tax the specific cars which at a given moment were within its borders. The route over which the cars travel extending beyond the limits of the State, particular cars may not remain within the State; but the company has at all times substantially the same number of cars within the State, and continuously and constantly uses there a portion of its property; and it is distinctly found, as matter of fact, that the company continuously, throughout the periods for which these taxes were levied, carried on business in Pennsylvania, and had about one hundred cars within the State.

The mode which the State of Pennsylvania adopted, to ascertain the proportion of the company's property upon which it should be taxed in that State, was by taking as a basis of assessment such proportion of the capital stock of the company as the number of miles over which it ran cars within the State bore to the whole number of miles, in that and other States, over which its cars were run. This was a just and equitable method of assessment; and, if it were adopted by all the States through which these cars ran, the company would be assessed upon the whole value of its capital stock, and no more.

The validity of this mode of apportioning such a tax is sustained by several decisions of this court, in cases which came up from the Circuit Courts of the United States, and in which, therefore, the jurisdiction of this court extended to the determination of the whole case, and was not limited, as upon writs of error to the state courts, to questions under the Constitution and laws of the United States.

In the *State Railroad Tax Cases,* 92 U. S. 575, it was adjudged that a statute of Illinois, by which a tax on the entire taxable property of a railroad corporation, including its rolling stock, capital and franchise, was assessed by the state board of equalization, and was collected in each municipality in proportion to the length of the road within it, was lawful, and not in conflict with the Constitution of the State; and Mr. Justice Miller delivering judgment said:

"Another objection to the system of taxation by the State is, that the rolling stock, capital stock and franchise are personal property, and that this, with all other personal property, has a local situs at the principal place of business of the corporation, and can be taxed by no other county, city or town, but the one where it is so situated. This objection is based upon the general rule of law that personal property, as to its situs, follows the domicil of its owner. It may be doubted very reasonably whether such a rule can be applied to a railroad corporation as between the different localities embraced by its line of road. But, after all, the rule is merely the law of the State which recognizes it; and when it is called into operation as to property located in one State, and owned by a resident of another, it is a rule of comity in the former State rather than an absolute principle in all cases. *Green* v. *Van Buskirk,* 5 Wall. 312. Like all other laws of a State, it is, therefore, subject to legislative repeal, modification or limitation; and when the legislature of Illinois declared that it should not prevail in assessing personal property of railroad companies for taxation, it simply exercised an ordinary function of legislation." 92 U. S. 607, 608.

"It is further objected that the railroad track, capital stock and franchise is not assessed in each county where it lies, according to its value there, but according to an aggregate value of the whole, on which each county, city and town collects taxes according to the length of the track within its limits." "It may well be doubted whether any better mode of determining the value of that portion of the track within any one county has been devised, than to ascertain the value of the whole road, and apportion the value within the county

by its relative length to the whole." "This court has expressly held in two cases, where the road of a corporation ran through different States, that a tax upon the income or franchise of the road was properly apportioned by taking the whole income or value of the franchise, and the length of the road within each State, as the basis of taxation. *Delaware Railroad Tax*, 18 Wall. 206; *Erie Railroad* v. *Pennsylvania*, 21 Wall. 492." 92 U. S. 608, 611.

So in *Western Union Telegraph Co.* v. *Attorney General of Massachusetts*, 125 U. S. 530, this court upheld the validity of a tax imposed by the State of Massachusetts upon the capital stock of a telegraph company, on account of property owned and used by it within the State, taking as the basis of assessment such proportion of the value of its capital stock as the length of its lines within the State bore to their entire length throughout the country.

Even more in point is the case of *Marye* v. *Baltimore & Ohio Railroad*, 127 U. S. 117, in which the question was whether a railroad company incorporated by the State of Maryland, and no part of whose own railroad was within the state of Virginia, was taxable under general laws of Virginia upon rolling stock owned by the company, and employed upon connecting railroads leased by it in that State, yet not assigned permanently to those roads, but used interchangeably upon them and upon roads in other States, as the company's necessities required. It was held not to be so taxable, solely because the tax laws of Virginia appeared upon their face to be limited to railroad corporations of that State; and Mr. Justice Matthews, delivering the unanimous judgment of the court, said:

"It is not denied, as it cannot be, that the State of Virginia has rightful power to levy and collect a tax upon such property used and found within its territorial limits, as this property was used and found, if and whenever it may choose, by apt legislation, to exert its authority over the subject. It is quite true, as the situs of the Baltimore and Ohio Railroad Company is in the State of Maryland, that also, upon general principles, is the situs of all its personal property; but for

purposes of taxation, as well as for other purposes, that situs may be fixed in whatever locality the property may be brought and used by its owner by the law of the place where it is found. If the Baltimore and Ohio Railroad Company is permitted by the State of Virginia to bring into its territory, and there habitually to use and employ a portion of its movable personal property, and the railroad company chooses so to do, it would certainly be competent and legitimate for the State to impose upon such property, thus used and employed, its fair share of the burdens of taxation imposed upon similar property used in the like way by its own citizens. And such a tax might be properly assessed and collected in cases like the present, where the specific and individual items of property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business. In such cases, the tax might be fixed by an appraisement and valuation of the average amount of the property thus habitually used, and collected by distraint upon any portion that might at any time be found. Of course, the lawlessness of a tax upon vehicles of transportation used by common carriers might have to be considered in particular instances with reference to its operation as a regulation of commerce among the States, but the mere fact that they were employed as vehicles of transportation in the interchange of interstate commerce would not render their taxation invalid." 127 U. S. 123, 124.

For these reasons, and upon these authorities, the court is of opinion that the tax in question is constitutional and valid. The result of holding otherwise would be that, if all the States should concur in abandoning the legal fiction that personal property has its situs at the owner's domicil, and in adopting the system of taxing it at the place at which it is used and by whose laws it is protected, property employed in any business requiring continuous and constant movement from one State to another would escape taxation altogether.

*Judgment affirmed.*

MR. JUSTICE BRADLEY, with whom concurred MR. JUSTICE FIELD and MR. JUSTICE HARLAN, dissenting.

I dissent from the judgment of the court in this case, and will state briefly my reasons. I concede that all property, personal as well as real, within a State, and belonging there, may be taxed by the State. Of that there can be no doubt. But where property does not belong in the State another question arises. It is the question of the jurisdiction of the State over the property. It is stated in the opinion of the court as a fundamental proposition on which the opinion really turns that all personal as well as real property within a State is subject to the laws thereof. I conceive that that proposition is not maintainable as a general and absolute proposition. Amongst independent nations, it is true, persons and property within the territory of a nation are subject to its laws, and it is responsible to other nations for any injustice it may do to the persons or property of such other nations. This is a rule of international law. But the States of this government are not independent nations. There is such a thing as a Constitution of the United States, and there is such a thing as a government of the United States, and there are many things, and many persons, and many articles of property that a State cannot lay the weight of its finger upon, because it would be contrary to the Constitution of the United States. Certainly, property merely carried through a State cannot be taxed by the State. Such a tax would be a duty — which a State cannot impose. If a drove of cattle is driven through Pennsylvania from Illinois to New York, for the purpose of being sold in New York, whilst in Pennsylvania it may be subject to the police regulations of the State, but it is not subject to taxation there. It is not generally subject to the laws of the State as other property is. So if a train of cars starts at Cincinnati for New York and passes through Pennsylvania, it may be subject to the police regulations of that State whilst within it, but it would be repugnant to the Constitution of the United States to tax it. We have decided this very question in the *Case of State Freight Tax*, 15 Wall. 232. The point was directly raised and decided that property on its passage through a State in the course of interstate commerce cannot be taxed by the State, because taxation is incidentally regula-

tion, and a State cannot regulate interstate commerce. The same doctrine was recognized in *Coe* v. *Errol*, 116 U. S. 517.

And surely a State cannot interfere with the officers of the United States, in the performance of their duties, whether acting under the Judicial, Military, Postal, or Revenue Departments. They are entirely free from state control. So a citizen of the United States, or any other person, in the performance of any duty, or in the exercise of any privilege, under the Constitution or laws of the United States, is absolutely free from state control in relation to such matters. So that the general proposition, that all persons and personal property within a State is subject to the laws of the State, unless materially modified, cannot be true.

But, when personal property is permanently located within a State for the purpose of ordinary use or sale, then, indeed, it is subject to the laws of the State and to the burdens of taxation; as well when owned by persons residing out of the State, as when owned by persons residing in the State. It has then acquired a *situs* in the State where it is found.

A man residing in New York may own a store, a factory or a mine in Alabama, stocked with goods, utensils or materials for sale or use in that State. There is no question that the situs of personal property so situated is in the State where it is found, and that it may be subjected to double taxation, — in the State of the owner's residence, as a part of the general mass of his estate; and in the State of its situs. Although this is a consequence which often bears hardly on the owner, yet it is too firmly sanctioned by the law to be disturbed, and no remedy seems to exist but a sense of equity and justice in the legislatures of the several States. The rule would undoubtedly be more just if it made the property taxable, like lands and real estate, only in the place where it is permanently situated.

Personal as well as real property may have a situs of its own, independent of the owner's residence, even when employed in interstate or foreign commerce. An office or warehouse, connected with a steamship line, or with a continental railway, may be provided with furniture and all the apparatus

and appliances usual in such·establishments. Such property would be subject to the *lex rei sitæ* and to local taxation, though solely devoted to the purposes of the business of those lines. But the ships that traverse the sea, and the cars that traverse the land, in those lines, being the vehicles of commerce, interstate or foreign, and intended for its movement from one State or country to another, and having no fixed or permanent situs or home, except at the residence of the owner, cannot, without an invasion of the powers and duties of the Federal government, be subjected to the burdens of taxation in the places where they only go or come in the transaction of their business, except where they belong. *Hays* v. *Pacific Mail Steamship Co.*, 17 How. 596; *Morgan* v. *Parham*, 16 Wall. 471; *Transportation Co.* v. *Wheeling*, 99 U. S. 273. To contend that there is any difference between cars or trains of cars and ocean steamships in this regard, is to lose sight of the essential qualities of things. This is a matter that does not depend upon the affirmative action of Congress. The regulation of ships and vessels, by act of Congress, does not make them the instruments of commerce. They would be equally so if no such affirmative regulations existed. For the States to interfere with them in either case would be to interfere with, and to assume the exercise of, that power which, by the Constitution, has been surrendered by the States to the government of the United States, namely, the power to regulate commerce.

Reference is made in the opinion of the court to the case of *Railroad Company* v. *Maryland*, 21 Wall. 456, in which it was said that commerce on land between the different States is strikingly dissimilar in many respects from commerce on water; but that was said in reference to the highways of transportation in the two cases, and the difference of control which the State has in one case from that which it can possibly have in the other. A railroad is laid on the soil of the State, by virtue of authority granted by the State, and is constantly subject to the police jurisdiction of the State; whilst the sea and navigable rivers are highways created by nature, and are not subject to state control. The question in that case

related to the power of the State over its own corporation, in reference to its rate of fares and the remuneration it was required to pay to the State for its franchises — an entirely different question from that which arises in the present case.

Reference is also made to expressions used in the opinion in *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, which, standing alone, would seem to concede the right of a State to tax foreign corporations engaged in foreign or interstate commerce, if such property is within the jurisdiction of the State. But the whole scope of that opinion is to show that neither the vehicles of commerce coming within the State, nor the capital of such corporations, is taxable there; but only the property having a situs there, as the wharf used for landing passengers and freight. The entire series of decisions to that effect are cited and relied on.

Of course I do not mean to say that either railroad cars or ships are to be free from taxation, but I do say that they are not taxable by those States in which they are only transiently present in the transaction of their commercial operations. A British ship coming to the harbor of New York from Liverpool ever so regularly and spending half its time (when not on the ocean) in that harbor, cannot be taxed by the State of New York (harbor, pilotage and quarantine dues not being taxes). So New York ships plying regularly to the port of New Orleans, so that one of the line may be always lying at the latter port, cannot be taxed by the State of Louisiana. (See cases above cited.) No more can a train of cars belonging in Pennsylvania, and running regularly from Philadelphia to New York, or to Chicago, be taxed by the State of New York, in the one case, or by Illinois, in the other. If it may lawfully be taxed by these States, it may lawfully be taxed by all the intermediate States, New Jersey, Ohio and Indiana. And then we should have back again all the confusion and competition and state jealousies which existed before the adoption of the Constitution, and for putting an end to which the Constitution was adopted.

In the opinion of the court it is suggested that if all the States should adopt as equitable a rule of proportioning the

taxes on the Pullman Company as that adopted by Pennsylvania, a just system of taxation of the whole capital stock of the company would be the result. Yes, if — ! But Illinois may tax the company on its whole capital stock. Where would be the equity then? This, however, is a consideration that cannot be compared with the question as to the power to tax at all, — as to the relative power of the State and general governments over the regulation of internal commerce, — as to the right of the States to resume those powers which have been vested in the government of the United States.

It seems to me that the real question in the present case is as to the situs of the cars in question. They are used in interstate commerce, between Pennsylvania, New York and the Western States. Their legal situs no more depends on the States or places where they are carried in the course of their operations than would that of any steamboats employed by the Pennsylvania Railroad Company to carry passengers on the Ohio or Mississippi. If such steamboats belonged to a company located at Chicago, and were changed from time to time as their condition as to repairs and the convenience of the owners might render necessary, is it possible that the States in which they were running and landing in the exercise of interstate commerce could subject them to taxation? No one, I think, would contend this. It seems to me that the cars in question belonging to the Pullman Car Company are in precisely the same category.

The case of the *Western Union Telegraph Company* v. *Massachusetts*, 125 U. S. 530, is entirely different from the present. In that case there was no question as to the situs of the property taxed. It was situated within the State, consisting of poles, and wires, and offices and a general plant for telegraphic purposes. The property belonged in Massachusetts, and was consequently taxable there. There was a phase of that case which led some of the justices of the court to doubt as to the proper decision to be made. The difficulty was this: The tax was, in terms, made upon a certain proportional part of the capital stock of the company. That proportion was regulated by the number of miles of telegraph within

the State, as compared with the number of miles of telegraph belonging to the company in the whole country. It was objected that the property of the company situated in Massachusetts had no necessary relation to the said proportion of the capital stock; because the aggregate value of the stock might depend on property, franchises and amount of business outside of Massachusetts, largely out of proportion to the miles of telegraph lines outside of that State. But the difficulty of getting at the true value of the property within the State, and of adopting any other rule for ascertaining it, as well as the failure of the company to show that the rule adopted produced any unfair results, finally induced an acquiescence in the decision; but expressly on the ground that though the tax was nominally on the shares of the capital stock of the company, it was in effect a tax upon the property owned and used by it in Massachusetts, the proportional length of the lines in that State to their entire length throughout the whole country being merely used as the basis for ascertaining the value of that property. The same difficulty as to the method of determining value exists in the present case which existed in that; but the more serious difficulty lies in the question of the situs of the property, and the consequent jurisdiction of the State of Pennsylvania to tax it. It is not fast property; it does not consist of real estate; it does not attach itself to the land; it is movable and engaged in interstate commerce, not in Pennsylvania alone, but in that and other States, and the question is, how can such property be taxed by a State to which it does not belong? It is indirectly, but virtually, taxing the passengers, many of them carried from New York to Chicago, or from Chicago to New York, and most of them from one State to another. It is clearly a burden on interstate commerce. The opinion of the court is based on the idea that the cars are taxable in Pennsylvania because a certain number continuously abide there. But how can they be said to abide there when they only stop at Philadelphia and other stations to take on passengers? And it is all the same whether they cross the State entirely, or run into or out of other States with a terminus in Pennsylvania.

It is only by virtue of such of its property as is situated in Pennsylvania that the Pullman Company can be taxed there. Its capital stock, as such, is certainly not taxable there. In the case of *Western Union Telegraph Co.* v. *Massachusetts*, the tax was sustained only on the ground that it was a tax on the property *in* Massachusetts. The idea that the capital stock, as such, could be taxed was repudiated. The State can no more tax the capital stock of a foreign corporation than it can tax the capital of a foreign person. Pennsylvania cannot tax a citizen and resident of New York, either for the whole or any portion of his general property or capital. It can only tax such property of that citizen as may be located and have a situs in Pennsylvania. *State Tax on Foreign Bonds*, 15 Wall. 300. And it is exactly the same with a foreign corporation. Its capital, as such, is not taxable. *Gloucester Ferry Co.* v. *Pennsylvania, qua supra.* To hold otherwise would lead to the most oppressive and unjust proceedings. It would lead to a course of spoliation and reprisals that would endanger the harmony of the Union.

Mr. Justice Brown, not having been a member of the court when this case was argued, took no part in its decision.