## Snodgrass' Estate

*William M. Boenning*, for exceptant; *Francis F. Burch*, contra.

KLEIN, J., March 5, 1935.—This case arises on appeal from an assessment of transfer inheritance tax by the Register of Wills of Philadelphia County under the Act of June 20, 1919, P. L. 521. The opinion of the hearing judge sustained in part the exceptions filed by the appellants.

The present exceptions to the rulings of the hearing judge were filed by the Commonwealth.

The facts have been agreed upon in a stipulation entered into by the parties in interest. For 9 years prior to his death, decedent, who was domiciled in Pennsylvania, spent his winters in Los Angeles, Cal., and the rest of each year in Philadelphia. However, in 1930, due to ill health, he remained in Los Angeles and did not return to Philadelphia in the spring as had been his custom. On August 4, 1930, he died in California.

On the date of his death, there was found in a safe deposit box in a Los Angeles bank, which decedent had rented on December 4, 1929, the sum of $89,500 in paper money. There was also found in or about the hotel room in Los Angeles, which was occupied by the decedent at his death, paper money and coins in the amount of $326.66.

The State of California assessed and levied inheritance tax upon these assets.

The hearing judge ruled that the currency found in the vault, as well as that found in or about the hotel room, was tangible personal property having its situs for purposes of inheritance taxation in California. The Commonwealth excepts to this ruling on the ground that paper money is intangible personal property and taxable at the domicile of the decedent.

We find no error in the ruling of the hearing judge. The principles established by Frick et al. v. Pennsylvania, 268 U. S. 473 (1925), and Blodgett v. Silberman et al., 277 U. S. 1 (1928), govern this case.

Counsel for the Commonwealth draws from the stipulated facts the inferences that the decedent carried with him from place to place the money involved, keeping it in safe deposit boxes in Philadelphia while there, and in Los Angeles while in that city, and that therefore he brought with him when he came to Los Angeles 9 months prior to his death both the money found in the vault and that found in or about his room. We do not decide the accuracy of these inferences, since even if they be accepted as facts, they do not alter our view that the taxable situs of this currency was in California and not in Pennsylvania.

In Blodgett v. Silberman et al., supra, at page 18, the court said on the subject of the taxability of money found in a safe deposit box upon the date of the death of a decedent:

"It is argued that it was not like coin or treasure in bulk, but like loose change, so to speak. To money of this amount usually and easily carried on the person, it is said that the doctrine of *mobilia sequuntur personam* has peculiar application in the historical derivation of the maxim. But we think that money, so definitely fixed and separated in its actual *situs* from the person of the owner as this was, is tangible property and can not be distinguished from the paintings and furniture held in the *Frick* case to be taxable only in the jurisdiction where they were."

The maxim, *mobilia sequuntur personam*, once an accepted doctrine of the common law of taxation has been virtually rejected in this country insofar as tangible personal property is concerned. The trend away from this fiction began many years ago: Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 22 (1891); Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 206 (1905). Finally Frick et al. v. Pennsylvania, supra, conclusively established the doctrine that physical facts and not fiction must control the situs of tangible property for purposes of taxation, and it has been followed without deviation since: Blodgett v. Silberman et al., supra; City Bank Farmers Trust Co. v. Schnader et al., 293 U. S. 112 (1934).

Counsel for the Commonwealth also excepts to the ruling of the hearing judge fixing the tax at 2 percent rather than 10 percent of the sum paid the alleged widow in settlement of her claim as widow against the estate. We find no error in this ruling. The hearing judge very properly followed the decision of this court in Kuh's Estate, 22 D. & C. 311 (1935) in which a similar question was raised by the Commonwealth, and in which President Judge Lamorelle held, after a careful review of the law on the subject, that the tax was due at the rate of 2 percent.

The exceptions are dismissed and the register is directed to reassess the tax in conformity with the opinion of the hearing judge.