*193
 
 By the Court.
 

 While these cases are encumbered with words, figures and formulas, each boils down to a simple factual determination,, to wit, the percentage of appellant’s cars within the state during the respective years. However, the facts are befogged by speculation. The valuation of the cars less depreciation was stipulated.
 

 As correctly stated by the Board of Tax Appeals, “the factual issue is the ‘average daily number of cars in the state of Ohio ’ with due regard to the number of idle, out of repair and icing cars that are said to have never entered Ohio during the taxing period.”
 

 The Department of Taxation, which embraces the Tax Commissioner and the Board of Tax Appeals, is equipped with engineers and accountants. Our investigation is limited to determining whether the decision of the Board of Tax Appeals is unreasonable or unlawful, and whether due process has been accorded to appellant or an unlawful burden has been placed on interstate commerce.
 

 In the case of
 
 Postal Telegraph Cable Co.
 
 v.
 
 Adams,
 
 155 U. S., 688, 697, 39 L. Ed., 311, 15 S. Ct., 268, it was held:
 

 “* * * by whatever name the exaction [by taxation of an instrumentality of interstate or international commerce] may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution.”
 

 Section 5415, General Code, provides in part as follows:
 

 “The term ‘public utility’ as used in this act means and embraces each * * * equipment company, * * * and such term ‘public utility’ shall include any plant or property owned or operated, or both, by any such
 
 *194
 
 companies, corporations, firms, individuals or associations.”
 

 Section 5416, General Code, provides in part as follows:
 

 “Any person * * * or corporation, *
 
 *
 
 * when engaged in the business of furnishing or leasing cars, of whatsoever kind or description, to be used in the operation of any railway line or lines, wholly or partly within this state, such line or lines not being owned, leased or operated, by such company, is an equipment company * * *.”
 

 Section 5462, General Code, requires equipment companies to file annual reports.
 

 Section 5463, General Code, provides that such reports shall contain:
 

 “10. The whole length of the lines of railway over which the company runs its cars, and the length of so much of such lines as is without and is within this state.
 

 "11. The whole number and value of the cars owned or leased by the company classifying the cars according to kind, and the daily average number of cars operated in this state. ’ ’
 

 Section 5464, General Code, provides:
 

 “In the case of an equipment company, such statement shall also contain the whole number and value of the cars owned and leased by the company, classifying the cars according to kind; the whole length of the lines of railway, wherever located, operated by the companies, naming them, to which cars owned by such equipment company are leased, and the length of so much of such lines as is without and within this state, giving the name and location of the lines wholly or partially within this state.”
 

 Section 5465, General Code, provides:
 

 “On the first Monday in July, the commission[er] shall ascertain and determine the amount and value of
 
 *195
 
 the proportion of the capital stock * * * of equipment companies, representing capital and property of such companies owned and used in this state, and in so determining shall be guided in each case by the proportion of the capital stock of the company representing rolling stock, which the miles of railroad over which such company runs cars, or its cars are run in this state, bear to the entire number of miles in this state and elsewhere over which such company runs cars, or it’s cars are run, and such other rules and evidence as will enable the commission [er] to determine, fairly and equitably, the amount and value of the capital stock of such company representing capital and property owned and used in this state.”
 

 Section 5466, General Code, provides:
 

 “Before the amount and value of the capital stock of any company representing capital and property owned and used in this state is determined, any company or person interested shall have the right, on written application, to appear before the commission [er] and be heard in the matter of such determination. ’ ’
 

 Appellant attacks the constitutionality of “Sections 5463 and 5466 inclusive,” General Code, on the grounds that they deprive it of its property without due process and unduly burden interstate commerce. Appellant also attacks the method used by the Board of Tax Appeals and in lieu thereof offers a formula as to number of cars in Ohio during the years in question by estimated rates of speed of cars through other states and ex parte counts of its first ten cars on certain days on two out of a number of roads upon which its cars travel in Ohio.
 

 The car-mileage formula was used in the instant cases for the reason that appellant omitted to furnish information on track mileage, though called upon to
 
 *196
 
 do so by the commissioner’s information form required by law (Section 5463, General Code).
 

 The appellant’s auditor testified before the Board of Tax Appeals as follows:
 

 “Q. Mr. Salomo, can you furnish us, or your company furnish us with the track mileage that your cars ran over in Ohio during the tax year ending April 30, 1946? A. No, sir, we cannot.
 

 “Q. Can you or your company furnish us with the track mileage that your cars ran over in the United States during the tax year ending April 30, 1946? A. No, sir, we cannot.
 

 “Q. Can you or your company furnish us with the track mileage, or the amount of track mileage, in Ohio that your cars ran over during the tax year ending April 30, 1947? A. No, sir, we cannot.
 

 “Q. Can you or your company furnish us with the track mileage that your cars used or ran over during the tax year ending April 30, 1947? A. No, sir.”
 

 It must be conceded that where transitory property, such as cars of an equipment company, is involved with no fixed situs, the state has a right to tax proportionately that portion of such cars which is temporarily within the state so that each state may equitably share in a just portion of the company’s tax burden.
 

 Appellant protests the method of apportionment followed by the Tax Commissioner on the ground that it violates due process. The appeals in the instant cases are from the decision of the Board of Tax Appeals, hence the method followed by the Tax Commissioner is immaterial here.
 

 In the case of
 
 Clark
 
 v.
 
 Glander, Tax Commr.,
 
 151 Ohio St., 229, 85 N. E. (2d), 291, this court held that a hearing before the Board of Tax Appeals upon an appeal from an order of the Tax Commissioner is a trial
 
 de novo
 
 and that the Board of Tax Appeals is required to arrive at its own valuation based upon the
 
 *197
 
 evidence before it. Tbe first and third paragraphs of the syllabus thereof read as follows:
 

 “1. In an appeal from an assessment based on an alleged erroneous valuation of intangible personal property by the Tax Commissioner, the Board of Tax Appeals is required to consider the entire evidence anew and arrive at its own valuation based on the evidence before it.”
 

 “3. Broad investigational powers are vested in the Board of Tax Appeals by Section 5611, General Code. Where, as a result of the board’s consideration of all the evidence before it, it affirms an assessment by the Tax Commissioner and an appeal is taken to the Supreme Court from such affirmance, the court may, under Section 5611-2, General Code, reverse, vacate or modify the decision of the board oniy when the court is of the opinion that such decision is unreasonable or unlawful.”
 

 In the case of
 
 Bloch
 
 v.
 
 Glander, Tax Commr.,
 
 151 Ohio St., 381, 86 N. E. (2d), 318, it was held:
 

 “1. A full administrative appeal from an order of the Tax Commissioner to the Board of Tax Appeals is contemplated by the provisions of Sections 5611 and 5611-1, General Code, that, in an appeal to the Board of Tax Appeals from an order of the Tax Commissioner, the Board of Tax Appeals ‘may order the appeal to be heard upon the record and the evidence certified to it by the Tax Commissioner, but upon application of any interested party shall order the hearing of additional evidence; and it may make, or cause to be made, such investigation with respect to the appeal as it may deem proper’ and ‘may affirm, reverse, vacate or modify the * * * orders complained of.’
 

 “2. The rule generally applied by the courts, that the action of a public officer or board within the limits of the jurisdiction conferred by law is presumed to be valid, in good faith and in the exercise of sound judg
 
 *198
 
 ment, is not applicable in an appeal from the Tax Commissioner to
 
 the
 
 Board of Tax Appeals pursuant to Sections 5611 and 5611-1, General Code, which require such board to grant the appellant a full hearing on his complaint.”
 

 The Board of Tax Appeals compared the number of car miles travelled by appellant’s cars in Ohio with the number of car miles travelled by appellant’s cars everywhere to determine the percentage which was applied to the value of appellant’s useable cars after eliminating therefrom the average daily number of bad order cars and the number of ice cars owned by appellant. While appellant complains that track mileage was not used, it is to be borne in mind not only that the appellant failed to furnish the figures as to track mileage but its witness testified that such information was not obtainable. Besides, the statute provides that the commissioner shall use not only such mileage but “* * * such other rules and evidence as will enable the commission [er] to determine, fairly and equitably, the amount and value of the capital stock of such company representing capital and property owned and used in this state.” (Section 5465, General Code.)
 

 Appellant arrived at its average number of cars in Ohio for the tax years 1946 and 1947 from an alleged check of the first ten of its cars each month travelled across the state at a rate of speed estimated by appellant to be 300 miles per car per day on three fast, through routes, The Erie, the N. Y. C. & St. L. (Nickel Plate) for both tax years, and the Pennsylvania for one tax year. No representative of the commissioner was given an opportunity to participate in such check. The appellant estimated the speed of 300 miles per car per day in Ohio by speculating on the speed of its cars in Oklahoma and other states.
 

 Tt is pointed out on behalf of the Tax Commissioner
 
 *199
 
 that an exhibit in the cases shows many more miles in Ohio were travelled by appellant’s cars over two railroads than those used in appellant’s test. Appellant’s check was inadequate and incomplete.
 

 We approve the statement of the Board of Tax Appeals in its journal entry that “this board is unable to refrain from the further comment that it is difficult for it to believe that bad order cars were not promptly repaired, and that all idle and bad order cars found repose in the other 47 states and Canada and that none ever stood idle in Ohio.. The board seriously questions the credibility of this particular evidence. ’ ’
 

 In the case of
 
 Pullman’s Palace Car Co.
 
 v.
 
 Pennsylvania,
 
 141 U. S., 18, 26, 35 L. Ed., 613, 11 S. Ct., 876, Mr. Justice Gray said:
 

 ‘ ‘ The mode which the state of Pennsylvania adopted, to ascertain the proportion of the company’s property upon which it should be taxed in that state, was by taking as a basis of assessment such proportion of the capital stock of the company as the number of miles over which it ran cars within the state bore to the whole number of miles, in that and other states, over which its cars were run. This was a just and equitable method of assessment; and, if it were adopted by all the states through which these cars ran, the company would be assessed upon the whole value of its capital stock, and no more.
 

 “The validity of this mode of apportioning such a tax is sustained by several decisions of this court, in cases which came up from the circuit courts of the United States, and in which, therefore, the jurisdiction of this court extended to the determination of the whole case, and was not limited, as upon writs of error to the state courts, to questions under the Constitution and laws of the United States.”
 

 
 *200
 
 In the case of
 
 Wisconsin
 
 v.
 
 J. C. Penney Co.,
 
 311 US., 435, 85 L. Ed., 267, 61 S. Ct., 246, it was held, as stated in the headnotes in L. Ed.:
 

 "The test of whether a tax law violates the dne process clause is whether it bears some fiscal relation to the protection, opportunities, and benefits given by the state, or, in other words, whether the state has given anything for which it can ask a return.” See, also,
 
 Ott, Commr., v. Mississippi Valley Barge Line Co.,
 
 — U. S., —, 93 L. Ed. (Adv.), 431, decided February 7,'1949.
 

 • The state does afford appellant’s property, while in this state, protection against fire, theft, et cetera. It must be conceded that under the facts and circumstances of the instant case no mathematical formula may be constructed which will prove infallible. The efforts of the Tax Commissioner and the Board of Tax Appeals should be directed to arriving at a fair, just and reasonable method of valuation. In this connection the following language used by Mr. Justice McReynolds in the case of
 
 Union Tank Line Co.
 
 v.
 
 Wright, Comptroller General,
 
 249 U. S., 275, 63 L. Ed., 602, 39 S. Ct., 276, is appropriate here:
 

 "A state may not tax property belonging to a foreign corporation which has never come within its borders — to do so under any formula would violate the due process clause of the 14th Amendment. In so far, however, as movables are regularly and habitually used and employed therein, they may be taxed by the state according to their fair value along with other property subject to its jurisdiction, although devoted to interstate commerce. While the valuation must be just it need not be limited to mere worth of the articles considered separately but may include as well ‘the intangible value due to what we have called the organic relation of the property in the state to the whole sys
 
 *201
 
 tem. ’ How to appraise them fairly when the tangibles constitute part of a going concern operating in many states often presents grave difficulties; and absolute accuracy is generally impossible. We have accordingly sustained methods of appraisement producing results approximately correct, — for example, the mileage basis in case of a telegraph company
 
 (Western Union Telegraph Co.
 
 v.
 
 Massachusetts)
 
 and the average amount of property habitually brought in and carried out by a car company
 
 (American Refrigerator Transit Co.
 
 v.
 
 Hall).
 
 But if the plan pursued is arbitrary and the consequent valuation grossly excessive it must be condemned because of conflict with the commerce clause or the 14th Amendment or both. ’ ’
 

 In the case of
 
 American Refrigerator Transit Co.
 
 v.
 
 Hall, Treas.,
 
 174 U. S., 70, 43 L. Ed., 899, 19 S. Ct., 599, the editorial staff of the L. Ed. Eeports formulated the following headnote:
 

 ‘ ‘ The state may tax the average number of refrigerator ears used by railroads within the state, but owned by a foreign corporation which has no office or place of business within the state, and employed as vehicles of transportation in the interchange of interstate commerce. ’ ’
 

 In the language of Mr. Justice Shiras in the same case it was said at page 81:
 

 “It was further stipulated ‘that the average number of cars of the plaintiff used in the course of the business aforesaid within the state of Colorado during the year for which such assessment was made would equal forty, and that the cash value of plaintiff’s cars exceeds the sum of two' hundred and fifty dollars per car, and that if such property of the plaintiff is assessable and taxable within such state, then the amount for which such cars, the property of the plaintiff, is assessed by said state board of equalization is just and
 
 *202
 
 reasonable, and not in excess of the value placed upon other like property within said state for the purposes of taxation.’
 

 “Applying the reasoning and conclusions of the cases hereinbefore cited to those admitted facts, we have no difficulty in affirming the judgment of the Supreme Court of Colorado sustaining the validity of the taxation in question.
 

 “The state statutes impose no burdens on the business of the plaintiff in error, but contemplate only the assessment and levy of taxes upon the property situated within the state; and the only question is whether it was competent to ascertain the number of the cars to be subjected to taxation by inquiring into the average number used within the state limits during the period for which the assessment was made.
 

 “It having been settled, as we have seen, that where a corporation of one state brings into another, to use and employ, a portion of its movable personal property, it is legitimate for the latter to impose upon such property, thus used and employed, its fair share of the burdens of taxation imposed upon similar property used in like way by its own citizens, we think that such a tax may be properly assessed and collected, in cases like the present, where the specific and individual items of property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business, and that the tax may be fixed by an appraisement and valuation of the average amount of the property thus habitually used and employed. Nor would the fact that such cars were employed as vehicles of transportation in the interchange of interstate commerce render their taxation invalid. * * * [citing cases]
 

 ‘ ‘ The judgment of the Supreme Court of the State of Colorado is accordingly affirmed.”
 

 
 *203
 
 Coming to the factual question, we find no discrimination or procedure in this case whereby appellant has been denied the equal protection of the law. Appellant insists that its figures and formula should be adopted, while the Tax Commissioner and the Board of Tax Appeals find otherwise from the evidence.
 

 We have,hereinbefore pointed out that the Department of Taxation is equipped with engineers and accountants. While the testimony of such experts may not be used unless they are placed upon the witness stand and an opportunity given for cross-examination, we see no objection to their use in the construction and application of formulas based not upon their own theories but upon the evidence introduced in the case. However, there is no evidence to show that such experts were used and no complaint made in respect of such use, if any.
 

 The journal entry of the Board of Tax Appeals contains the following finding:
 

 “A. R. T. report for 1946 shows a total car mileage of 333,446,886 and that portion thereof in Ohio to be 16,327,119. It reported a total of 10,048 cars, 8,133 of which were serviceable, and a daily average of 1,915 bad order cars. Thereupon the Tax Commissioner determined present car value less depreciation to be $8,629,361 after depreciating the serviceable car number by 1,915, daily average of bad order cars which did not enter Ohio during the tax year. Thereupon 16,327,119 (Ohio mileage) was divided by 333,446,886 which produced Ohio proportion of .048964676; and this multiplied by $8,629,361 (total value of serviceable cars) produced $422,533 tax value upon which the tax of $6,338.00 was extended.”
 

 At the hearing before the Board of Tax Appeals it was stipulated that the average value per car of appellant’s serviceable cars was $946.47 for the year
 
 *204
 
 ending April 30, 1946. For the year 1947 the conceded value of the serviceable cars was $947.19.
 

 The board’s entry continues:
 

 “A. R. T. report for 1947 shows total car mileage of 355,466,933 and that portion thereof in Ohio to be 16,729,828. It reported a total of 9,735 cars, 8,031 of which were serviceable, and a daily average of 1,704 bad order cars. Thereupon the Tax Commission determined present car value less depreciation to be $8,759,685.42. No bad order cars were deducted from the total serviceable cars. Thereupon 16,729,828 (Ohio mileage) was divided by 355,466,933 which produced Ohio proportion of .047064372; and this multiplied by $9,220,940 (total value of all cars) produced $433,977 tax value upon which a tax of $6,508.66 was extended.
 

 “Appellant’s computation as to the number of its taxable cars in Ohio is as follows. We quote from its brief:
 

 “ ‘The daily average number of cars in the state of Ohio in the tax years 1946 and 1947 was 149.1 and 152.8, respectively. For the year 1946, the daily average number of cars, was arrived at on the basis of an average of 300 miles per car per day of travel in the state of Ohio during the tax year. By multiplying 300 miles per car per day by 365 (the number of days in a year) 109,500 miles per car per year is obtained. By dividing that into 16,327,119 miles, the total car miles run within the state of Ohio for the tax year ending April 30, 1946, 149.1 cars in the state of Ohio is obtained. ’
 

 “These figures were obtained by a spot check of the first ten cars run on two railroads out of the 19 reported hauling appellant’s cars each month. There was further evidence produced before this board that in 1946 there were 281 ice cars used only on certain railroads totally without Ohio and which never entered Ohio; and that during that tax year there were 2,952
 
 *205
 
 bad order and idle cars which never entered Ohio. For the year 1947 there were 224 snch so-called ice cars and 2,842 bad order and idle cars. This testimony as to idle and bad order cars conflicts materially with the numbers annually reported. Which is the correct figure is problematical. Whether the ice cars were included in the reported idle car figures is equally confusing. This board is unable to refrain from the further comment that it is difficult for it to believe that bad order cars were not promptly repaired, and that all idle and bad order cars found repose in the other 47 states and Canada and that none ever stood idle in Ohio. The board seriously questions the credibility of this particular evidence.
 

 “In
 
 Pullman’s Palace Car Co.
 
 v.
 
 Pennsylvania,
 
 141 U. S., 18, 35 L. Ed., 613, the court considered the car mileage method. It was held that:
 

 “ ‘This was a just and equitable method of assessment ; and, if it were adopted by all the states through which these cars ran, the company would be assessed upon the whole value of its capital stock, and no more. ’
 

 “In
 
 Union Tank Line Co.
 
 v.
 
 Wright,
 
 249 U. S., 275, 63 L. Ed., 602, we find that portion of the
 
 Pullman’s Go. case
 
 condemned as obiter dictum, and the method used in this case was the track mileage method and held'to be arbitrary and unreasonable where the valuation arrived at was six times greater than the value of the property found to have been within the state of Georgia. In the recent case of
 
 Ott
 
 v.
 
 Mississippi Valley Barge Line Co.,
 
 decided by the U. S. Supreme Court on February 28,1949, now reported in Vol. 93— No. 8, page 431, L. Ed., advance sheets, the
 
 Pullman’s Go. case
 
 was further considered. Following the approval of the excerpt taken from
 
 Wisconsin
 
 v.
 
 J. C. Penney Co., supra,
 
 as hereinbefore noted, the court said:
 

 
 *206
 
 “ ‘Those requirements are satisfied if the tax is fairly apportioned to the commerce carried on within the state.
 

 “ ‘There is such an apportionment under the formula of the Pullman.’
 

 “Finding this situation to exist, it is the understanding of this board that the last expression of the Supreme Court, as found in the
 
 Ott case, supra,
 
 approves of the formula used in the
 
 Pennsylvania case
 
 even though the same court held it to be obiter dictum in the
 
 Wright case.
 

 “Inasmuch as ‘track mileage’ or ‘unit rule’ formula figures are not kept by the railroads and are unobtainable, as evidenced herein, and ‘car mileage’ formula is a fair and reasonable method, and a ‘daily average’ method based upon speed fails to take account of idle cars and cars not in motion, and there is a discrepancy in evidence as to the number of idle cars and cars out of order, this board is unable to find that appellant’s property has been taken without due process or an excessive or improper burden assessed upon interstate commerce. If methods are equally acceptable and apportionment fair and reasonable, it is not for a taxpayer to dictate the method usable unless he show by sufficient credible evidence by actual measurement the number of cars that were actually taxable and that he has been improperly and illegally taxed.
 

 “The board further is of opinion that for the tax year 1946 the Tax Commissioner should have deducted from the total number of usable cars the 281 ice cars which are shown to have never entered the state of Ohio, that he should have found the average depreciated value per car to be $946.47 as per the stipulation of the parties, and his computations made accordingly.
 

 “Concerning the assessment made for the year 1947, the Tax Commissioner should have deducted from the
 
 *207
 
 total number of ears tbe 1,704 bad order cars to arrive at total number of usable cars and lie should have deducted therefrom the 224 ice cars.
 

 “The causes are hereby remanded to the Tax Commissioner for correction of the assessments in the manner designated. Otherwise the orders appealed from are affirmed.”
 

 The appellant made application to the Board of Tax Appeals for reconsideration and modification after which the Board of Tax Appeals made the following entry:
 

 “This matter this day came on further to be considered upon appellant’s application for reconsideration and modification of the board’s order hereinbefore made on July 19, 1949. It is considered by the board that the application is not well taken. There are a number of apparent reasons why this is so. The Board of Tax Appeals feels that further and extended comment would be of little profit. However, it desires to make one observation. Up to the filing of this application appellant took the position that its bad order, ice and idle cars were never in Ohio and were hence nontaxable. We are now told by an ingenuous but fallacious argument that bad order and idle cars are and were included in the spot cheek of the movement of ten cars on each of two roads hauling its cars across Ohio. There is no evidence within the record but that these 20 cars proceeded across Ohio without interruption. It is true that the record stated that there were gathering points for idle cars without the state. No effort was made to establish that all idle cars were in these yards and that none were ever within Ohio. Any such, attempt to establish that idle cars never rested in Ohio was simply considered incredible. The board frankly was unable to disregard what is common knowledge to anyone who cares to look at idle cars standing
 
 *208
 
 in railroad yards among which idle refrigerator cars are constantly found.
 

 “The application is overruled.”
 

 We have carefully examined the evidence and records in these cases and are unable to find that the decision of the Board of Tax Appeals is either unreasonable or unlawful. Therefore, we are of the opinion that the decision of the Board of Tax Appeals should be, and hereby is, affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart, Turner and Taft, JJ., concur.