### TEXAS & P. RY. CO. et al. v. STATE.
### No. 2590.

Court of Civil Appeals of Texas. El Paso.
Nov. 12, 1931.

Rehearing Denied Dec. 3, 1931.

Kemp & Nagle, Turney, Burges, Culwell & Pollard, S. N. Russell, and Del W. Harrington, all of El Paso, for appellants.

C. W. Croom and D. E. Mulcahy, both of El Paso, for the State.

PELPHREY, C. J.

This suit was instituted by the state of Texas, for the use and benefit of El Paso-Hudspeth counties road district of Texas, against the Texas & Pacific Railway Company, a corporation, Rio Grande, El Paso & Santa Fé Railway Company, a corporation, Texas & New Orleans Railroad Company, a corporation, El Paso & Southwestern Company, a corporation, and El Paso & Northeastern Railroad Company, a corporation, for "the amounts, including principal, interest and penalties to April 1, 1929, assessed against said defendants for their respective rolling stock and intangibles for the year 1928," which was set out as follows:

| | |
|---|---|
| Tex. & Pacific Railway Company.... | $133.08 |
| Rio Grande, El Paso & Santa Fe Railway Company .................. | 191.22 |
| Texas & New Orleans Railroad Company ........ ...... ........ | 774.51 |
| El Paso & Northeastern Railroad Company ....................... | 263.62 |

Appellee alleged:

"That prior to January 1st, 1928, at an election held in El Paso County and in Hudspeth County, Texas, and as a result therefrom, there was duly and legally created a Road District, composed of El Paso County, Texas, and Hudspeth County, Texas, known as 'El Paso-Hudspeth Counties Road District of Texas'; said District having been created and duly organized under and by virtue of section 52, of article 3 of the Constitution of the State of Texas, and under and by virtue of chapter 80 of the General and Special Laws of the State of Texas, passed by the Fortieth Legislature, at the First Called Session thereof;

"That prior to January 1st, 1928, at an election held therefor, the District did, in the time, form and manner required by law, vote and issue bonds of said District, aggregating the sum of $1,100,000.00.

"That at the time said bonds were issued, and in the manner and form required by law, the Commissioners' Court of each of said Counties did, for the use and benefit of said District, levy a tax on the intangible assets and rolling stock of the defendants above named, for the year 1928, for the purpose of providing for the payment of said bonds and interest as required by law. * * *"

Appellants answered jointly by general demurrer, special exception, and by general denial.

The case was tried by the court without a jury, and judgment was rendered against the respective appellants for the amounts sued

for, together with interest thereon from April 1, 1929, at the rate of 6 per cent.

From such judgments, this appeal has been perfected.

### Opinion.

The propositions advanced by appellants are: (1) That their general demurrer and special exception to appellee's petition should have been sustained; (2) that the court erred in its finding that the levy and assessment were solely the levy and assessment of El Paso county and not of the El Paso-Hudspeth counties road district; (3) that the court erred in rendering judgment for appellee because chapter 80, Laws of the Fortieth Legislature (1927), First Called Session (Vernon's Ann. Civ. St. arts. 778a–778p), does not authorize the district to levy and collect a tax on the intangible assets of appellants; (4) that no other statute gives it such authority; and (5) that the court erred in concluding that the intangible assets and rolling stock of appellants were subject to the tax sued for because they were duly and legally assessed by the assessing officers of El Paso county, and because the commissioners' court of El Paso county had levied a tax against them at the same time it levied taxes against other property.

The above propositions present, as we view it, the question of the right of appellee to levy a tax on the rolling stock and the intangible assets of appellants, and that only.

Appellee contends that the following two sections of chapter 80 of the Fortieth Legislature, 1st Called Sess., vested El Paso county and its commissioners' court with authority to levy the tax here sought to be collected:

"Section 1. That, pursuant to authority conferred by Section 52, of Article 3, of the Constitution, any number of adjoining counties within this State are hereby empowered and authorized to issue bonds in any amount not to exceed one-fourth of the assessed valuation of the real property of the territory included within such counties, and to levy and collect annually ad valorem taxes to pay the interest upon such bonds and to provide a sinking fund for the redemption thereof, for the purpose of the construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

"Sec. 9. The amount of the bond tax to be levied annually shall be determined by the commissioners' courts of the respective counties before the period at which the annual levy of taxes is made in the counties composing said district, and the proportion of the tax levied against the property in each of the counties, respectively, shall be levied by the Commissioners' Court of such county at the same time and in the same manner that other taxes in such counties are levied, and the levy and collection thereof shall be governed by the same laws that govern the levy and collection of county taxes."

It will be noted that section 1 (Vernon's Ann. Civ. St. art. 778a) authorizes the issuance of bonds in an amount not to exceed one-fourth of the assessed valuation of the real property of the territory included within such counties, or within the district, which the caption of the act shows was the purpose of its enactment. While it further provides that such counties may levy and collect annually ad valorem taxes to pay the interest on the bonds and to provide a sinking fund for their redemption, there is nothing in the section which authorizes the levy or collection of taxes on any property not within the several counties comprising the District.

In section 9 (Vernon's Ann. Civ. St. art. 778i) the commissioners' courts of the respective counties are authorized to levy a tax against the property in their respective counties.

It therefore follows, we think, that the subsequent provision that the levy and collection of such taxes shall be governed by the same laws that govern the levy and collection of county taxes does not have the effect of authorizing them to levy and collect taxes on rolling stock and intangible assets, unless it can be said that such rolling stock and intangible assets come within the term "property in each of the Counties." That intangible assets of a railroad are not situated in the several counties through which its line runs has been definitely decided by our Supreme Court in the case of M., K. & T. Ry. Co. of Texas v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681; Lively et al. v. M., K. & T. Ry. Co. of Texas, 102 Tex. 545, 120 S. W. 852.

In the first case, the claim was made that the "Intangible Assets Act" was unconstitutional because it conflicted with sections 8, 11, and 14 of article 8 of the Constitution, providing that all property of railroad companies except the rolling stock shall be assessed in the several counties in which located; that all property, whether owned by persons or corporations, shall be assessed in the county where situated; and that an assessor of taxes should be elected in each county.

The Supreme Court, in holding that act constitutional, held that intangible values of a railroad were the values of the railroad property above the value of its physical assets, which intangible values ordinarily resulted from the profits of its business as actually conducted, the value which proceeds from the working whole of the business, and therefore could not be held to be situated in a county in which only a part of the physical properties were located.

In the second case, with the question of whether the act was in conflict with sections 1 and 18 of article 8 of the Constitution, under

consideration referred to their holding in the first case and reaffirmed their position in that case.

Article 7168, Revised Statutes, requires that railroad corporations in the state shall deliver a sworn statement to the assessor of each county and incorporated city or town into or through which any part of their road may run or in which they own or are in possession of real estate of their property. In specifying what shall be in such statement, the following provision is found: "3. All personal property of whatsoever kind or character, except the rolling stock belonging to the company or in their possession in each respective county, listing and describing the said personal property in the same manner as is now required of citizens of this State."

Article 7169 provides that such railroad corporations shall deliver a sworn statement setting forth the true and full value of its rolling stock, together with the names of all the counties through which it runs, and the number of miles of roadbed in each of such counties to the assessor of the county in which its principal office is situated; that such statement shall be submitted to the board of equalization of such county for review who shall certify the final valuation thereof to the comptroller; that he shall apportion the valuation among the several counties in proportion to the mileage of roadbed in such counties, and certify such apportionment to such counties.

The Commission of Appeals in Gulf, C. & S. F. Ry. Co. v. City of Dallas, 16 S.W.(2d) 292, held that article 8, section 5, of the Constitution, referred to the taxable situs and not the actual situs of property. Citing Great Southern Life Insurance Co. v. City of Austin, 112 Tex. 1, 243 S. W. 778, as authority for so holding.

The commission then held that the city of Dallas, having adopted the general taxation laws by the provisions of its charter, was bound by the exceptions included therein.

■ We think this holding, together with the holding in Great Southern Life Insurance Co. v. City of Austin, supra, authorizes the conclusion that the expression "property in each of the Counties" meant property in the counties for the purpose of taxation.

From what has been said it follows that there is no express grant in the statute for the district or the several counties acting in its behalf to levy taxes on either the rolling stock or intangible assets of appellants.

■ Granting, however, that there is some doubt as to the proper construction of the statute, it would be our duty to strictly construe it against the power to tax.

■ We have reached the conclusion that there is no express provision authorizing the levy of the tax in question and that the trial court was in error in rendering judgment therefor. The case of State v. Houston & T. C. Ry. Co. (Tex. Civ. App.) 209 S. W. 820, clearly supports this holding. The facts in the case of Bell County v. Hines, Director General (Tex. Civ. App.) 219 S. W. 556, are clearly distinguishable from the facts here, and the decision there can have no application.

The judgment of the trial court is reversed, and judgment here rendered for appellants.