## STATE v. TEXAS & P. RY. CO. et al.
### No. 1683—6180.

Commission of Appeals of Texas, Section A.
June 24, 1933.

D. E. Mulcahy and C. W. Croom, both of El Paso, for plaintiff in error.

Turney, Burges, Culwell & Pollard, S. N. Russell, Kemp & Nagle, and Del W. Harrington, all of El Paso, for defendants in error.

HARVEY, Presiding Judge.

In this suit the state of Texas, suing for the use and benefit of the El Paso-Hudspeth Counties Road District, seeks to recover of the Texas & Pacific Railway Company, and several other railroad companies, the amount of taxes for the year 1928, which were levied in that year, by the commissioners court of El Paso county for the use and benefit of said road district, on the rolling stock and intangible assets of said companies, respectively, in accordance with valuations of said proper-

ty as made by the authorities prescribed by law, and apportioned by them to El Paso county. The taxes sought to be recovered were levied for the purpose of paying road bonds of the district which were duly, issued by the district in accordance with law. The road district is composed of El Paso county and Hudspeth county. The trial court gave judgment for the plaintiff for the amount sued for, and the Court of Civil Appeals reversed that judgment and rendered judgment for the railroad companies. 43 S.W.(2d) 628.

The only question in the case is whether or not the Legislature has given authority to road districts, composed of two or more counties, to levy and collect a bond tax on rolling stock and intangible assets of a railroad, in accordance with valuations made, as prescribed by law, and duly apportioned to a county, as such, which is embraced in the district. The state contends that authority for the levy and collection of such tax by the road district is given by sections 1 and 9 of the act passed in 1927 (Acts 40th Leg. First Called Session, chap. 80 [Vernon's Ann. Civ. St. arts. 778a, 778i]), which read as follows:

Section 1. "That, pursuant to authority conferred by Section 52, of Article 3, of the Constitution, any number of adjoining counties within this State are hereby empowered and authorized to issue bonds in any amount not to exceed one-fourth of the assessed valuation of the real property of the territory included within such counties, and to levy and collect annually ad valorem taxes to pay the interest upon such bonds and to provide a sinking fund for the redemption thereof, for the purpose of the construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

Section 9. "The amount of the bond tax to be levied annually shall be determined by the commissioners' courts of the respective counties before the period at which the annual levy of taxes is made in the counties composing said district, and the proportion of the tax levied against the property in each of the counties, respectively, shall be levied by the commissioners' court of such county at the same time and in the same manner that other taxes in such counties are levied, and the levy and collection thereof shall be governed by the same laws that govern the levy and collection of county taxes."

The railroad companies contend that the above statutes do not confer authority on the commissioners' court of El Paso county, as an agency of the road district, to levy the district bond tax on rolling stock and intangible assets of said railroads. As basis for this contention, the companies assert, in effect, that the situs of no part of their rolling stock and intangible assets is in the district as such, and therefore the commissioners' court of El Paso county, as an agency of the district, had

no authority to levy the tax on said property. This contention calls for the interpretation of the language of the above statutes authorizing the bond tax, there provided, to be levied "against the property in each of the counties, respectively." The question is whether the property sought to be taxed in the present instance is comprehended by the language just quoted.

██ It is the settled law that, as a whole, the intangible assets of a railroad company have no situs in any of the counties through which the railroad runs. Missouri, K. & T. Ry. v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681; Lively v. Ry., 102 Tex. 545, 120 S. W. 852. But this does not mean that the Legislature has no authority to provide for the partition of the intangible assets of a railroad company, for taxation purposes, and to fix the situs of the respective portions in the respective counties sharing in the partition. On the contrary, the Legislature has authority to do this, and has, in effect, done that very thing. In what is sometimes known as the intangible tax law, being chapter 4, tit. 122, of the Revised Statutes (articles 7098–7116), the Legislature has provided a state tax board, and made various provisions for the ascertainment by the board of the true value of the intangible assets of a railroad company, for the purpose of taxation, and for the apportionment of such value, for taxation purposes, to the various counties in which lines of the railroad lie. The standard by which such apportionment is to be made by the board is prescribed in the act. The conclusion reasonably follows that, by these apportionment provisions of the statutes, the Legislature intended that such apportionment, when made as prescribed, would fix the situs of each portion in accordance with the allocation made by the board. It is quite true, as contended by counsel, that in the intangible tax law, it is provided in effect (article 7105) that intangible assets may be taxed for state and county purposes, and it is further true that no provision in that law affords legislative authority for the taxing of such assets for any other purpose or for the benefit of any other public corporation or agency. But it is reasonably clear that authority in this respect is, by the act of 1927, first mentioned above, given to road districts composed of two or more counties. It is there provided, in effect, that the tax to pay the bonds, there provided for, shall be levied "against the property in each of the counties, respectively." This language, in the connection used, plainly comprehends all property situated, either actually or by operation of law, in any of the counties as such.

██ As regards the value of the rolling stock which, under the provisions of article 8, § 8, of the Constitution, and of article 7169 of the statutes, was apportioned by the state comp-troller to El Paso county, the situs for taxation purposes became fixed in that county. The reasons upon which this conclusion is based are substantially the same as those upon which our conclusion respecting intangible assets is based. In both instances, the situs became fixed in the county at large, but not, of course, in any particular portion of the county.

We recommend that the judgment of the Court of Civil Appeals, reversing the judgment of the trial court, be reversed and that the judgment of the trial court be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.