### TEXAS PIPE LINE CO. v. ANDERSON et al.

#### No. 8471.

Court of Civil Appeals of Texas. Austin.

Jan. 6, 1937.

Rehearing Denied Jan. 27, 1937.

John C. Jackson, of Houston, and Black & Graves, of Austin, for appellant.

Wm. McCraw, Atty. Gen., H. Grady Chandler, Asst. Atty. Gen., and Marvin Hall and Wm. N. Sands, both of Austin, for appellees.

BLAIR, Justice.

The appellant, Texas Pipe Line Company, instituted this proceeding against R. B. Anderson, state tax commissioner; George .H. Sheppard, state comptroller; and R. B. Stanford, secretary of state, individually and as members of the state tax board, to restrain them from certifying for taxation purposes the board's valuation of the intangible assets of appellant to the counties in which its physical pipe line properties are situated, alleging that the Intangible Tax Act (articles 7098 to 7104 and 7106 to

7116, R.S.1925, and article 7105, as amended by the Act of 1933, c. 162, § 12 [Vernon's Ann.Civ.St. art. 7105]), under which the board acted, violated the equal and uniform taxation clause of the State Constitution (art. 8, § 1) and the equal protection and due process clauses of the Federal Constitution in the particulars urged (Const. U.S. Amend. 14). A general demurrer was sustained to the pleadings of appellant and upon its refusal to amend the proceeding was dismissed; hence this appeal.

Appellant is a Texas corporation engaged as a common carrier oil pipe company. It owns and operates 5,234 miles of oil pipe lines in the states of Texas, New Mexico, and Louisiana. A trunk line runs from Lynch, N. M., to Port Arthur, Tex., and other trunk lines run from north and central Texas to Port Arthur and other Gulf Coast points. Appellant's pipe lines run into and through 88 Texas counties and its pipe liens of all sizes in Texas aggregate 4,520. miles, which converted by calculation is equivalent to 3,859.33 miles of 8" pipe lines of all sizes in Texas aggregate tangible Tax Act by amendment thereto in 1933. (Acts 43d Leg.1933, c. 162, p. 409 [Vernon's Ann.Civ.St. art. 7105]).

Appellant alleged and by its first proposition contends that the Intangible Tax Act infringes said constitutional provisions because it does not provide any lawful method of equalizing the value of its intangible assets taxed by the act with the properties, intangible as well as tangible, of other taxpayers similarly situated. In making this contention, appellant construes the taxing act as not conferring the power of/equalization on the state tax board and as expressly denying that power to the various county equalization boards, with the result that the similar properties of taxpayers subject to the jurisdiction of the county boards are equalized, while that right is denied as to the intangible properties of the oil pipe line companies included in the taxing law.

The Intangible Tax Act has been assailed in many cases on the same constitutional grounds that are urged in the instant case, and the courts are unanimous in holding that the law is sound and valid and in no way or manner violative of the fundamental law of either state or nation. Lively v. Missouri, K. & T. R. Co., 102 Tex. 545, 120 S.W. 852, 858; · Missouri, K. & T. R. Co. v. Shannon, 100 Tex. 379, 100 S.W. 138, 10 L.R.A.(N.S.) 681; State v. Texas & P.

Ry. Co. (Tex.Com.App.) 62 S.W.(2d) ᵥ81; Baker v. Druesedow, 263 U.S. 137, 44 S. Ct. 40, 42, 68 L.Ed. 212, 214, affirming Druesedow v. Baker (Tex.Com.App.) 229 S.W. 493; Missouri, K. & T. R. Co. v. Hassell, 57 Tex.Civ.App. 522, 123 S.W. 190 (error refused); State v. Houston & T. C. R. Co. (Tex.Civ.App.) 209 S.W. 820. Appellant contends, however, that neither of these cases determines .the constitutional questions presented here. That is, whether the act confers the power of equalization on the state tax board at all; and, if so, whether the act provides for any lawful method of equalizing the value of the intangible assets taxed by the law with the properties, intangible as well as tangible, of other taxpayers similarly situated. We regard both the Lively Case and the Druesedow Case as having necessarily determined these questions. A brief review of the history of the act and the court decisions construing it sustains this conclusion.

The first intangible tax law was enacted in 1905 (Acts 1905, c. 146, p. 351), and provided "for taxing intangible assets" of the corporations included therein; and further provided that the valuation of such intangible assets as certified by the state tax board be assessed and equalized for taxation purposes by the county taxing authorities. The state tax board and the courts construed the act of 1905 as authorizing the county taxing officers alone to equalize the certified value of such intangible assets with other properties assessed by them in the county. Missouri, K. & T. R. Co. v. Shannon, supra; Annual Report, 1906, W. R. Davies, Tax Com., p. 9.

The act of 1905 was amended by the act of 1907 (Acts 1907, 1st called, p. 469), which expressly withdrew from the county taxing authorities the power to assess or equalize the value of the intangible assets taxed by the law with other taxed properties. The act of 1907 provided the method of valuation, rendition, and assessment of the intangible assets taxed by the law, and conferred authority on the state tax board to value, assess, apportion, and certify its assessed valuation to the · county authorities for listing and placing upon the tax rolls and for the collection of the taxes thereon; and further provided that this valuation by the state board was not subject to review or change by the county taxing officers. In such situation the power to value, assess, and apportion such intangible assets

for taxation purposes by the state tax board necessarily conferred authority on the board to equalize the assessed value of the intangible assets as a part of the tangible properties to which they belong, so that the aggregate assessed value of the intangibles and the physical units shall be upon substantially equal basis with the assessed value of all other taxed properties.

As affects this appeal, the act of 1933 (c. 162, § 12) merely amended article 7105 (Vernon's Ann.Civ.St. art. 7105), which named the various corporations included in the taxing law by adding or including therein common carrier oil pipe line companies, such companies not having been included in the act of 1907. No other change material here was made in any provision of the act of 1907, and the court decisions construing said act necessarily apply to oil pipe line companies brought under the taxing law by the 1933 amendment.

With respect to the method of equalization of the intangible assets taxed by the state tax board, the act (articles 7101 and 7102) provides and makes it the duty of said board to examine the books, papers, and accounts of all taxpayers for the purpose of acquiring information in aid of the enforcement of all tax laws; and the board, or a member thereof, is required to at least once each year visit such counties in the state as deemed necessary for the purpose of investigating into and aiding in the enforcement of all revenue laws, and especially those relating to "the rendition, assessment and collection of taxes." The act (articles 7106 to 7113) further requires each corporation included therein to deliver a verified statement to the state tax commissioner each year showing certain specified data, including the "assessed and true value" of its tangible assets or property "in each county in this state and the total assessed value and also the true value thereof." It further provides the method by which the state tax board may ascertain the true value of the intangible assets of each corporation included in the act, and that when the statement supplied under the terms of the act appears to be insufficient, the board may demand additional information and hear evidence in any manner it may deem best; the act directing the board to so value, assess, and apportion the intangible assets as to bring about a just, fair, equitable, and lawful valuation and apportionment of the assessed valuation of the intangible assets to the various counties, which could not be done unless the board assessed them on an equal percentage of true value with other property generally in the counties where the tangible assets are located. In the instant case appellant filed its sworn statement as required by the act and on the form prescribed by the state tax board. The board fixed the value of appellant's intangible assets at $4,621,000. This valuation, as fixed by the board, represented 48 per cent. of the true and full value of such intangible assets, the board having found through a state-wide investigation that, on the average, property generally was assessed by the various county authorities at 48 per cent. of its true and full value for taxation purposes.

■ In view of this history of the Intangible Tax Act, we construe it as conferring authority on the state tax board to equalize the assessed value of the intangible assets of the corporations included in the law with the assessed value of all other taxed property similarly situated, and as having sufficiently outlined the method of equalization; and that in construing the act the courts have uniformly held that it is this equalized value of intangible assets that the state tax board is required to assess, apportion, and certify to the various counties for listing and collection of the taxes by the county authorities; and that the courts have necessarily determined these questions.

In the Lively Case the act was assailed upon the same constitutional grounds urged here and also upon the ground that it violated section 18 of article 8 of the State Constitution, which provides for county boards of equalization; the act having expressly withdrawn the power of equalization from such county boards. The court held, however, that the act did not violate either of such constitutional provisions. In so holding, the court necessarily construed the act as having conferred authority on the state tax board to equalize the assessed value of intangible assets with other taxed properties; because, if it had not so construed the act, the court would have been compelled to have declared the act void as not having provided for any authority with power to equalize the value of such intangible assets with other taxed property, and as not having provided for any method of equalization.

It is true the court further held in the Lively Case that because state tax board

assessed the intangible assets at their full and true value, and other property was assessed by the county tax assessor at only two-thirds of its true value, the act had been improperly administered; and that no greater proportion of the tax due on the intangible assets then the ratio existing between the valuation given other property and its full and true value could be collected; but in granting this relief the court held as follows: "In doing this the assessment made by the state board is not overturned, but, for the purpose of adjusting the rights of these parties, is treated as the taxable value of the intangible assets just as the taxable value of the property of Dallas county was treated as the basis upon which to apportion the tax."

These same constitutional questions were urged in the Druesedow Case, wherein the court held that the tax imposed did not violate the equal and uniform principle nor the equal protection and due process laws; it appearing that by taxing the assessed value of the tangible property as made by the county tax assessor and the assessed value of the related intangible assets as made by the state tax board together, the railroad company was not required to pay, on the average, at a higher percentage of the full and true value of the aggregate worth of its properties than was paid by other taxpayers on their properties. In affirming the Druesedow Case the Supreme Court of the United States held as follows:

"Under the laws of Texas the assessments are made by the separate action of two independent boards using different methods, but the taxes upon the tangible and the intangible property of railroads are laid at the same rate, and are collected by the same county officers. It is the settled law of the state that equitable relief will not be granted, on the ground of discrimination, against an excessive assessment of either one, if, taking the tax on tangible and the tax on intangible property together, the taxpayer is not called upon to pay, on the average, on a higher percentage of the actual value than are other persons and property. Missouri, K. & T. R. Co. v. Hassell, 57 Tex. Civ.App. 522, 123 S.W. 190; Druesdow v. Baker (Tex.Com.App.) 229 S.W. 493. Thus, the taxes on the two kinds of property are treated by its courts as parts of a single ad valorem tax on railroads. Their construction of the state statutes is binding upon us. The trial court found on adequate evidence that the aggregate assessment placed upon the tangible and the intangible property of the railroad in Harris county was about 45 per cent. of their aggregate true value, whereas the other property in the county was assessed at about 50 per cent. of its true value. Thus the railroad was not, in essence, subjected to any discrimination. Compare Davenport Nat. Bank v. Board of Equalization, 123 U.S. 83, 8 S.Ct. 73, 31 L.Ed. 94. The requirement of the equal protection clause was satisfied."

Thus the courts have recognized the equalized valuation placed on intangible assets by the state tax board, and in view of the fact that the constitutionality of the act was assailed on the grounds here urged, the courts have necessarily held that said board had the authority to equalize the assessed value of such intangible assets with other taxed properties; and this is true even though the courts may not have discussed the statutory method of equalization, which is clearly sufficient. This same construction has been placed upon the act by the state tax board and the Attorney General at least since 1920. The opinion of Hon. C. M. Cureton, Attorney General, dated June 12, 1920, to the state tax board, reads, in part, as follows:

"In other words, our interpretation of the intangible tax law is that it not only puts upon you the duty of finding the value of intangibles, but it puts upon you, and you alone, the duty of equalizing these intangible values with the values of tangible properties in the counties of the State; and that it is the equalized value which you are required, under the law, to certify to the tax assessor. Any other construction of this law, in our judgment, renders it, under the opinions of the Supreme Court of this State, and of the United States, unconstitutional and void."

 Appellant further contends that the Intangible Tax Act is void on grounds of unconstitutional discrimination. In making this contention appellant insists that discrimination is effected in two ways: (1) Because of alleged discrimination authorized and effected by the act itself; and (2) because the petition alleged specific facts which showed discrimination in the administration of the act and other tax laws against appellant. Neither ground urged is sustained.

In making the charge that the act is itself discriminatory, appellant alleged that in actual practice it was the only law of this state providing any way or means of taxing intangible values; that local taxing authorites have never in fact taxed the intangible values of companies not included in the act; that many companies conducting businesses of a unitary nature and having property with both tangible and intangible values extending through many counties, to wit, telegraph and telephone companies, light and power companies, gas pipe line companies, radio broadcasting companies, companies publishing and circulating newspapers, companies operating bus and truck lines, companies operating chain stores and others, are not included in the act; and that therefore discrimination is authorized and effected by the act itself, which results in an increased taxation burden and discrimination against those who are included in the act.

The contention that discrimination is effected by the act itself is not sustained for two reasons. In the first place, the general tax laws (articles 7145 and 7153) of this state require that the intangible property of all taxpayers not included in the act shall be taxed by the various county taxing authorities as a part of the whole value of the tangible property to which the intangibles relate. The fact that such county taxing authorities may not assess intangible values as alleged does not render the act itself discriminatory. Manifestly, the failure of such county taxing authorities to perform the duties imposed upon them by the general tax laws cannot be the basis for declaring the separate and independent Intangible Tax Act discriminatory. In the second place, the act is not invalid by reason of the fact that it does not apply to the companies named in the petition. It was held in the Shannon, Lively, and Druesedow Cases that the Legislature had the power to classify property for taxation purposes; that it may provide that the tangible and intangible values of certain property may be assessed separately and by different boards or taxing authorities; and that the Legislature may also require that the tangible and intangible values of other classes of property be assessed together for taxation purposes. In the Shannon Case it was further held the Intangible Tax Law was not invalid by reason of the fact that it did not apply to sleeping, dining, and palace car companies as against railroad companies in-

cluded in the act. The analogy between sleeping, dining, and palace car companies and railroad companies is as close if not closer than the analogy between appellant oil pipe line company and telegraph and telephone and other companies named in the petition. And the law is settled by these cases that the Fourteenth Amendment to the Federal Constitution does not preclude a state Legislature from taxing the intangible properties of railroad corporations; nor is the equal protection clause violated by prescribing different rules of taxation for railroad companies than for concerns engaged in other lines of business. The same rule applies as to the various companies involved in the instant case.

■ Nor do we sustain the contention that the petition of appellant alleged specific facts which showed that the method employed by the state tax board in the valuation, assessment, and apportionment of the intangible assets of appellant for taxation purposes actually resulted in an increased and discriminatory taxation burden upon it, and such as infringes the equal and uniform taxation principle and the equal protection and due process laws.

The petition alleged that a settled practice, custom, and system of which courts must take judicial knowledge now prevails, and for many years has prevailed, in every county in Texas to value, equalize, and assess property at less than its full or true value; and that the rule or percentage applied in the several counties varied greatly, some counties adopting a percentage as low as 25 per cent. and others a percentage as high as 60 per cent. of the true or full value. It further alleged that the county taxing authorities in each county into and through which the pipe lines of appellant run had already valued and assessed the tangible properties of appellant upon a basis of value and at a valuation at least equal to and uniform with the properties of other taxpayers, and in some instances on a higher basis; and that in valuing, equalizing, and taxing the tangible properties of appellant the county taxing authorities considered the same elements of value and followed the same methods as were employed in the case of other property having both tangible and intangible values of other taxpayers not included in the Intangible Tax Act, with the result that the properties of appellant had already been valued and assessed by the local taxing authorities upon a percent-

age of their full or true value as high as the valuations and assessments made against other taxpayers owning property in said counties; and that the state tax board knew of these facts at the time it valued, assessed, and apportioned the intangible assets of appellant for taxation purposes. The petition further alleged that the various county taxing authorities made no abatement or reduction in valuing,. equalizing, and assessing the tangible properties of appellant in said counties on account of the fact that it had been brought under the Intangible Tax Act. The petition did not allege that the intangible assets of appellant had not been equalized by the state tax board with the similar properties of other taxpayers in any particular county; but merely complained of the allegd illegal actions of the various county taxing authorities for taking into consideration the intangible assets or their value in making their valuation, equalization, and assessment of the tangible properties of appellant.

The state tax board has no authority or power to review or control the actions of the county taxing authorities in their valuation, equalization, and assessment of the tangible properties of the corporations included in the Intangible Tax Act; and, on the other hand, the county taxing authorities have no authority or power to review or control the actions of the state tax board in its valuation, equalization, and assessment of the intangible assets of such corporations for taxation purposes. Nor is there any statutory provision for equalizing assessments as between the tangible property assessed by the county taxing authorities and the intangible property assessed by the State tax board; but it is manifest that if the local taxing authorities value, equalize, and assess only the tangible properties of appellant, and the state tax board values, equalizes, and assesses only the intangible properties of appellant for taxation purposes, no unequal taxation burden or discrimination should or need result from their separate and independent actions in valuing, equalizing, and assessing different parts of the same property. And since the petition did not allege any illegal act on the part of the state tax board, nor that it failed to perform any of the duties imposed upon it by the taxing act, it failed to state a cause of action against the state board. The only alleged illegal acts were those of the various county taxing authorities,

and they are not sued; and as against their alleged illegal actions appellant may obtain full and complete relief by following the procedure outlined in the Lively and Druesedow Cases, and Atlantic Pipe Line Co. v. State Tax Board (D.C.) 12 F.Supp. 265, 267. In any event, the state tax board is not in the position nor is it required to defend the alleged illegal acts of the local taxing authorities, and especially acts over which the state board has no authority or power of review or control.

In Atlantic Pipe Line Company v. State Tax Board, supra, the same constitutional objections urged here were urged. Complainant alleged that the state tax board had assessed and was about to certify the assessed value of the intangible assets at a higher valuation than that applied to property generally in the various counties involved, and in refusing the temporary injunction applied for the court stated:

"Complainant has made out no such case here. Every claim it makes is available to it in defense of suits for the taxes, if the state and county, after the rolls are complete and complainant refuses to pay, proceed that way. It is fundamental that mere threat of suit does not authorize the issuance of injunction. Northport Power & Light Co. v. Hartley, supra [283 U.S. 568, 51 S.Ct. 581, 75 L.Ed. 1275].

"If the officers proceed by seizure and sale of its property under conditions which prevent its putting its defenses forward, or if otherwise a case for equity jurisdiction is made out, it is quite clear that every point it makes can be made more effectively against the local officers than it can be made here. The only result flowing to complainant from the denial of this injunction will be that it will have to make its defenses or proceed affirmatively, in the counties where the taxes are to be collected against it and where the real facts in each case can be tried out. This is not an irreparable injury. It is indeed no injury at all. Nor does this bill rightly present a case of multiplicity of suits. It merely puts complainant in the position that, having property in various counties, it must settle with the taxing officers in each county, in appropriate proceedings, the question of the amount of taxes justly due there. All that the board was proposing to do or can do, all that complainant seeks to enjoin it from doing, is to certify the assessment it has made."

■ It is also the settled rule that in determining the question of discrimination because of inequality of valuation or assessment of property for taxation purposes, the inquiry is necessarily limited to the particular taxing district or county in which the properties involved are situated. That is, as applied to the taxing act in question, "the intangible values cannot be fixed at a greater proportion of their actual value than that which is generally and uniformly applied to the tangible values of any particular county." Opinion Judge Cureton as Attorney General, supra. See, also, the Lively and Druesedow Cases and Lubbock Hotel Co. v. Lubbock Independent School Dist. (Tex.Civ.App.) 85 S.W.(2d) 776, wherein it is declared that in order to show discrimination in the valuation and assessment of property for taxation purposes, the petition must allege the specific facts, which, if proved, would establish as a matter of law that the method of valuation and assessment employed actually resulted in discrimination; and that this is the rule even though the method employed was unauthorized by law.

■ The petition of appellant did not allege any specific facts, which, if proved, would have established as a matter of law that the valuation and assessment placed on the intangible assets of appellant were at a greater percentage of their actual or true value than that generally and uniformly applied to other properties, tangible as well as intangible, in any particular county. At most, the petition merely alleged that property was systematically valued and assessed by local taxing authorities at from 25 to 60 per cent. of its true or full value in the various counties throughout this state and in the 88 counties in which the pipe lines of appellant are situated. The petition did not allege at what percentage of true or full value appellant's tangible properties were assessed in any particular county. Nor did it allege the true or full value of its tangible properties nor the assessed value of such properties in any specific county. The petition did not allege any facts, figures, estimates, or calculations showing that the assessed value of the tangible property by the county taxing authorities and the assessed value of the intangible property by the state tax board was made at a higher percentage of their total value than that applied to other property in any specific county. The county is the taxing unit and in absence of allegation of specific facts showing the exact conditions created by the separate assessment of the different parts of the same property in each county, the petition was insufficient as against a general demurrer. In any event, appellant was not entitled to an injunction against the state tax board, because it was not alleged to have committed any illegal acts in assessing and apportioning the intangible properties for taxation purposes; and with respect to the alleged illegal actions of the various county taxing authorities appellant has a full and complete remedy.

■ In this connection appellant states in its brief that the state tax board made a rough average of the different percentages at which properties were valued and assessed in the various counties throughout the state, and found the average to be 48 per cent. of the true or full value; and appellant contends that this method "would yield only a state-wide equalization as among the various counties of the State, and it manifestly does not create an equalization in each county." Under the rule above stated, it would have probably been the better practice for the state tax board to have equalized 'the intangible value apportioned -to each county on a basis of percentage of valuation each county systematically used; but the failure of the state tax board to so equalize the value of the intangibles does not entitle appellant to the injunctive relief prayed for, in absence of any allegation of specific facts which would show that the assessment of the intangibles at 48 per cent. of their true or full value together with the assessment on the tangibles on a basis of percentage of valuation each county taxing authorities used, totaled a greater percentage of the actual value of the whole property than was generally and uniformly applied to other property in each county. No such facts were alleged by appellant, and the courts are unanimous in holding that the constitutional guarantees of equal and uniform taxation and of equal protection and due process do not purport or undertake to deal with the method or manner of accomplishing these constitutional mandates; but that they are fully satisfied when equality and uniformity, the dominant provision of the Constitution, has actually been attained. Greene v. Louisville & I. R. Co., 244 U.S. 499, 511, 37 S. Ct. 673, 61 L.Ed. 1280, Ann.Cas.1917E, 88; Law v. People, 87 Ill. 385; Simpson

v. Pontotoc Common School Dist. (Tex. Civ.App.) 275 S.W. 449; Lively and Druesedow Cases, supra.

■ Nor do we sustain the second proposition of appellant that the Intangible Tax Act is repugnant to the due process clause of the Federal Constitution, "because it denies to the taxpayer brought under it an adequate hearing before some authorized board or other agency in respect to the amount of taxes assessed against them before the assessments become final." The act clearly provides for an adequate hearing before the state tax board in behalf of all taxpayers included therein in respect to the valuation of the intangible assets of all such taxpayers and in respect to the apportionment of the value of the intangible assets to the various county taxing authorities for listing and collection of the taxes.

Article 7106 requires each taxpayer brought under the law to file a statement with the tax commissioner, giving the information specified in article 7107. Article 7109 requires the tax commissioner to place this statement, and such other data or information as the state tax board may deem necessary, before said board on the first Monday after the first day of March, or as soon thereafter as may be practicable, of each year. Article 7110 requires the state tax board to consider such statement and information and to make a preliminary estimate, valuation, and apportionment of such intangible assets; and further provides that said board "shall, on or before the thirty-first day of May of each year, by registered mail, notify" all taxpayers included in the act of the preliminary estimate, valuation, and apportionment, and the amount thereof; and all such taxpayers "shall have fifteen days from the time of mailing such notice * * * to appear before such board, at Austin, on a date to be fixed by such notice, and request of such board a change or changes in such valuation and apportionment, or cancellation of such valuation and apportionment." The act further provides that all such taxpayers may appear in person and by attorney and introduce such evidence as they may desire; and that after such hearing the state tax board my change or cancel such valuation and apportionment as may be deemed just and proper in the premises. Appellant alleged that it made the statement required on the form provided by the state board; that a preliminary estimate of $5,705,900 as the total value of its intangibles was made by the board, which notified appellant of such preliminary estimate and of the apportionment; that a hearing was granted appellant at which it urged all of the objections that are here urged; and that after such hearing the said state tax board valued the intangible assets of appellant at $4,621,000, and would have certified that valuation and the apportionment thereof to the various counties, but for the restraining order issued by the trial court; and appellant has superseded the final judgment of dismissal.

■ The above detailed provisions of the act met every requirement of due process. The rule is settled that in matters of taxation the requirement of due process is satisfied if the party assessed is given an opportunity to be heard before some assessment board at some stage of the proceedings; it being sufficient if he is granted the right to be heard on the assessment before the valuation is finally determined. We regard the Shannon, Lively, and Druesedow Cases as having settled this question. See, also, McGregor v. Hogan, 263 U.S. 234, 44 S.Ct. 50, 68 L.Ed. 282.

■ Nor do we sustain the third proposition of appellant that the Intangible Tax Act is void because it does not prescribe any workable method of apportionment of the intangible values of oil pipe line companies brought under the act by the 1933 amendment to the several counties in which the tangible property to which the intangible values adhere is situated; but that instead the act unconstitutionally delegates to the state tax board the legislative duty of prescribing such standard of apportionment.

The act (article 7111) provides for the apportionment of intangible values in proportion to the business done in each county, "except that, in case of a railroad company, the apportionment to each county shall be in proportion to the line or lines" of railway therein. The act further provides as follows:

"In apportioning the value of the aforesaid properties, said board shall consider all evidence which may be put before it and all material facts at its command; and, if it shall believe that some method of calculation other than that specifically prescribed in this chapter is necessary in order to produce just and lawful results, said board shall follow that method of calculation which it believes best calculated, under

all circumstances, to bring about a just, fair, equitable and lawful valuation and apportionment of such property."

This general provision has been in each intangible tax law, and beginning with the Shannon Case the courts have been unanimous in holding that these laws prescribe the manner in which the state tax board shall apportion the values of intangibles among the counties in which the tangible property is located. The courts also hold that the Intangible Tax Act expressly provides that the procedure therein outlined for assessing and apportioning even railroad intangible values is not exclusive. And since the act expressly provides that the board shall follow any method of calculation it believes will best bring about a just, fair, and equitable apportionment of intangible values, it may adopt not only any method provided as to any corporation, but it may adopt any other reasonable method which will bring about a just, fair, and equitable apportionment. Whatever method will bring about a fair, just, and equitable apportionment is primarily a question of fact, and the conferring of authority on the board to ascertain such fact was not an unconstitutional delegation of legislative duty on the board.

 Nor is the provision expressly conferring authority on the state tax board to follow any method of calculation which it believes will best bring about a just, fair, and equitable apportionment of such intangible values in conflict with sections 8 and 11 of article 8 of the Constitution, which sections prescribe the situs of property for taxation purposes. Shannon Case; State v. Houston & T. C. R. Co. (Tex.Civ.App.) 209 S.W. 820; Atlantic Pipe Line Co. v. Brown County (D.C.) 12 F.Supp. 642. Intangible values have no situs apart from the tangible property to which they adhere or belong as a part of the aggregate worth. The Legislature was justified in authorizing the taxing of intangible values separately ·from the physical units of the various corporations included in the act, because their businesses have intangible values which transcend the aggregate worth of the physical property in the several counties through which they extend. Lively, Druesedow, and Shannon Cases; State v. Austin, etc., Ry. Co. (Tex.Civ.App.) 60 S.W. 886, error refused 94 Tex. 530, 62 S.W. 1050. The Intangible Tax Act has also been held valid under section 17 of article 8 of the Consti-

tution, which extends the power of the Legislature to tax beyond the subjects of taxation specified in the other provisions of the Constitution. Shannon Case. The act does not confer the power on the state tax board to fix the situs of intangibles themselves for taxation purposes, but merely confers the power on said board to fix the values and to assess and apportion such values to the various counties in which the Constitution and the statutes of this state fix the situs of the tangible property to which the intangible values adhere as a part of the aggregate worth or value. And since the act was assailed on the same constitutional grounds as are here urged in the Shannon, Lively, and Druesedow Cases, we regard them as having necessarily determined all these questions. See, also, State Railroad Tax Cases, 94 U.S. 575, 23 L.Ed. 663; Adams Exp. Co. v. Ohio State Auditor, 166 U.S. 185, 17 S.Ct. 604, 41 L.Ed. 965.

 Nor do we sustain the fourth proposition of appellant that the method of apportionment adopted ¦by the state tax board in certifying intangible values to the various counties is illegal because not authorized by the act.

The state tax board first ascertained the total value of the intangible assets of appellant, and equalized such value with the average value at which other property was assessed throughout the state. The tangible property of appellant to which the intangible assets adhere is located in 88 Texas counties. It consists of 4,520 miles of pipe lines of various dimensions, which the board reduced by calculation to 8″ pipe, and apportioned to each of the 88 counties its proportion of the total value of the intangible assets on a basis of 8″ pipe, giving each county its actual proportion of ·the total pipe line mileage within the state. The total miles of pipe in all states and its diameter are shown, as well as the total miles in calculated 8″ pipe. The total miles in 8″ pipe in Texas was 91.44 per cent. of the entire system of appellant, and the state tax board allocated to Texas 91 per cent. of the intangible values. The annual report of the state tax board for 1934 showed that the intangible values could not be fairly and equitably apportioned on the basis of receipts or revenues, because most of the transportation charges were made and collected at the points of origin of the oil for transportation.

The mileage basis of apportionment of the value of property as between states has been declared by the courts to be just and fair and as on approved principles. Western Union Tel. Co. v. Massachusetts, 125 U.S. 530, 8 S.Ct. 961, 31 L.Ed. 790; Pullman's Palace-Car Co. v. Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613; Pittsburgh, C. C. & St. L. R. Co. v. Backus, 154 U.S. 421; 14 S.Ct. 1114, 38 L.Ed. 1031.

The petition does not allege any specific facts showing that the mileage basis of apportionment as between the states involved was unjust, unfair, or inequitable. Nor does it allege that the mileage basis within the state is unfair, except for the fact that some county taxing authorities assess property generally on a lower percentage of true or full value than other county authorities, which only raises the equality and uniformity question, and as to which appellant has a complete remedy as hereinbefore set out. The 1934 and 1935 annual tax reports of the state tax board, cited by appellant, show the facts and reasons why the board adopted the mileage basis for certifying intangible values of pipe line companies, which was done after an inquiry into the investment totals and receipts or revenues, and as resulting in a fair, just, and equitable apportionment of intangible values. The act itself confers authority upon the board to adopt any method of apportionment which will result in a fair, just, lawful, and equitable apportionment. And the mileage basis of apportionment has been adopted by both state and federal courts as being fair and just and as an approved principle for taxation purposes.

█ Nor do we sustain the fifth proposition of appellant that the unit or system rule of valuing property for taxation cannot be legally applied to the oil pipe line property of appellant, because there is no such unity in fact in actual use as is indispensable to the valid operation of the rule.

This contention is predicated upon allegation of facts showing the location of the several trunk lines of appellant and their relation to each other, and showing that it had some four systems which do not physically connect; it being further alleged that no unity existed in respect to these lines, except that constituted by common ownership and management, and by the fact that the oil transported through them is all carried in a southerly direction to a point or points at or near the Gulf Coast.

Appellant owns and operates its entire pipe line system as one business enterprise and for profit. The same character of business is conducted by each unit of the entire system. That is, appellant is engaged in the one business of a common carrier oil pipe line company. The act classified the company's property for ascertaining its values for taxation purposes, and required that the intangible assets shall be valued and assessed separately from the tangible properties and by a different taxing authority. The validity of the act has been uniformly upheld by the courts. So there can be no valid reason why the state tax board would not be authorized to value the intangibles of each unit in order to ascertain the intangible value of the whole property used in the one business enterprise. We agree with the statement of the Attorney General in this connection that "whether one trunk line adds an additional value to another trunk line, the two having no 'unity of use in operation,' does not defeat the argument that these properties have in their aggregate a value in addition to the sum of all the values of the physical properties of such company dissociated from the uses to which each is put in the particular case. There may be no unity of use in operation between the two lines, but there is the same unity in the use of the entire property for the specific purpose of pecuniary profit to the owner, and there are the same elements of value arising from such use. The nature and characteristics of the property existing in the very necessity of the case, resulting from the very nature of the business, are such as to render it incapable of division into fragmentary parts and the valuing of each of such parts for assessment purposes, as though it were a separate and distinct item of property having a location in a particular taxing jurisdiction."

Under appellant's theory a pipe line company with only one trunk line would be subject to the act, while a company operating two or more separate trunk lines from two or more oil fields would not be subject to the act. The act brings all such companies within its terms, and because one owner operates two or more separate trunk lines as a part of his integral business, does not give occasion for the application of different principles of valuation. The sum total of the two or more trunk lines will necessarily be the total value of the whole intangible assets of the whole business enterprise. And while the several cases cited by

appellant support the proposition that where properties are disconnected in physical location and use they cannot be properly valued under the theory of our intangible tax law, they are not authority for the proposition actually presented; and although there is no physical connection between the several trunk lines, there is unity of use of each of them as a part of the one business enterprise for pecuniary profit to the owners, with the same elements of value arising from the use of each trunk line as an integral part of the one business enterprise, and such intangible properties may be properly valued together under the theory of our intangible taxing law.

The sixth and remaining proposition is that appellant is entitled to relief because the facts set forth in the petition show a systematic and intentional discrimination against it in respect to the valuation of its properties. All specific issues of discrimination alleged have been hereinabove discussed and disposed of, and we conclude that the trial court correctly sustained the general demurrer and dismissed this proceeding for an injunction.

Affirmed.