

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN

XXXXXXXXXXXXXX

ATTORNEY GENERAL

Honorable Leo C. Buckley
County Attorney
Zapata County
Zapata, Texas

Dear Sir:

Opinion No. 0-4174
Re: Authority for a common school
district bond tax to be levied
and collected on intangible
assets and property of oil pipe
line companies and common car-
rier pipe line companies.

We have received and considered your request for an
opinion from this department. We quote from your request:

"'May the tax voted by a Common School Dis-
trict for the retirement of school bonds be assess-
ed and collected against intangible property?'

"Heretofore, Zapata County has had no school
tax whatever, but in September of this year, Common
School District No. One of Zapata County voted a
$100,000.00 bond issue for school purposes, and the
Commissioners' Court of Zapata County has ordered
the assessment and collection of a tax of $0.30 per
hundred dollar valuation for the retirement of said
bonds and payment of interest thereon. Such tax
has been assessed against the intangible property
apportioned to this county, but a number of the oil
companies have already protested against this assess-
ment.

"The tax collector of Zapata County has re-
quested me to advise him as to whether or not this
Common School District school bond tax should be
assessed against such intangible property, but af-
ter reviewing the statutes and authorities, I still
find them somewhat confusing."

The question as presented is very broad. However, from a con-
sideration of the other facts set out in your inquiry we be-
lieve that the request was meant to be limited to the power
of the commissioners' court to levy and collect a school dis-

trict bond tax upon the intangible assets and property of those oil companies covered in Article 7105, Revised Civil Statutes of Texas, 1925, and this opinion is written upon that premise.

From the facts shown in your inquiry it is presumed that the election authorizing the issuance of the common school district bonds was held pursuant to the authority of Article 2784, Revised Civil Statutes, 1925. The pertinent provisions of said statute provide:

"The commissioners' court for the common school districts in its county, . . . shall have power to levy and cause to be collected the annual taxes and to issue the bonds herein authorized subject to the following provisions:

"(5) All property assessed for school purposes in a common school district shall be assessed at the rate of value of property as said property is assessed for State and county purposes."

Article 2787, Revised Civil Statutes, 1925, provides:

"If the proposition to issue said bonds of a common school district carries at an election held therefor, the commissioners' court assumes thereafter as practicable shall issue said bonds on the face and credit of said common school district. . . . . At the time of the issuance of said bonds and each year thereafter so long as any of said bonds are outstanding, the said court shall levy a bond tax within the limits herein specified to pay the interest on said bonds and redeem the same at maturity. The rate of such tax shall be determined by the trustees of the district and county superintendent and certified by the county superintendent to the commissioners' court, and said court shall levy the tax at said rate until a change is recommended by said school officers. Said tax shall be assessed and collected as provided by law for the assessment and collection of special local tax for the maintenance of public free schools."

Article 7105, as amended, Revised Civil Statutes of 1925, provides:

"Each incorporated . . . oil pipe line companies, and all common carrier pipe line companies of every character whatsoever, engaged in the trans-

portation of oil, . . . in addition to the ad valorem
taxes on tangible properties which are or may be im-
posed upon them respectively, by law, shall pay an
annual tax to the State, beginning with the 1st day
of January of each year, on their intangible assets
and property, and local taxes thereon to the counties
in which its business is carried on; . . ."

Article 7111, Revised Civil Statutes, 1925, provides
that the board shall make an apportionment of such taxes to the
respective counties in accordance with the method therein pro-
vided for. Article 7113, Revised Civil Statutes, 1925, provides
that within a specified time the board shall certify the a-
mount of intangibles which it finds to be taxable to the res-
pective county assessors in which such property is located and
to which an amount of the tax is prorated. The statute further
provides:

"That assessments, valuation and apportion-
ment of such intangible assets so fixed, determin-
ed, declared and certified by such board shall not
be subject to review, modification or change by
the tax assessor of such county, nor by the board
of equalization of such county; and the state and
county taxes thereon shall be collected by the tax
collector of such county and the county thereby in
the same manner and under the same penalties as
taxes upon other property. All state and county
ad valorem taxes upon all intangible property in
this State belonging to an individual, company,
corporation or association embraced by this chap-
ter, shall be assessed under its provisions and not
otherwise; but ad valorem taxes upon all other pro-
perty of any and all such individuals, companies,
corporations and associations shall be assessed as
is or as may be provided by law."

The case of State v. Houston and T. C. Railway Company,
(Civ. App.), 209 S.W. 820, held that a navigation district of
Harris County, whose boundaries were co-extensive with the
boundaries of said county, was unauthorized under the law to
collect a tax on the value of the rolling stock and intangible
property of the railroad company which values had been fixed
by the State Tax Board, apportioned by it and certified to the
tax assessor of that county for taxation purposes. The case
discusses in detail the history of various legislation that
had been introduced in the Legislature, but which had failed
to pass and become the law, which sought to make the property
of railroads and the property of other corporations specified
in Article 7105, supra, subject to taxation by school districts

and other subdivisions of the county. Your attention is directed to that portion of the opinion which because of its length will not be copied herein. The case also cites with approval a ruling of the Comptroller of Public Accounts of Texas holding that an independent school district was not authorized to tax intangible assets and properties of corporations coming under the particular provisions of the intangible tax law, which is now Article 7105, supra. THe opinion likewise cites with approval an opinion written by Luther Nichols, Assistant Attorney General, which holds:

> "Replying to your second question, I will say that the intangible assets and the rolling stock of the railroad company are not subject to the local school district taxes. They are liable for county taxes proper, but not for taxes levied by subdivisions of counties."

The case of Bell County v. Hines, (Civ. App.) 219 S.W. 556, writ of error refused, holds that a road district has no power to tax the intangible values of a railroad whose lines run through it.

The case of State of Texas v. Texas and Pacific Railway Company, (Comm. App.), 62 S.W. (2d) 81, held that a statute authorizing a road bond tax against "property in each of the counties, respectively" was sufficient authority to authorize a county to levy a road bond tax on the rolling stock and intangible assets of a railroad company even though the road district was composed of two counties. We do not think that the holding in that case is contrary to the rules laid down in the other cases referred to herein for the reason that a county may levy, assess and collect a tax for county purposes proper which the court recognized in this particular case.

In our opinion No. 0-1777 this department held:

> "With respect to your second question, you are advised that Article 7105 of the R.C.S. provides for an annual tax upon the intangible properties of corporations, such as oil pipe line companies, in favor of the State and of the county. The tax therein authorized in favor of the county means the county as such. There appears to be no authority for the imposition of the tax upon such intangibles in favor of districts or subdivisions of a county. In the present case the entire county is embraced in the countywide equalization district, but, nevertheless, it is a district and not a county within the meaning of this tax law."

The Supreme Court of Texas in the case of Tri-City Fresh Water Supply District No. 2 v. Mann, 142 S.W. (2d) 948, held:

"The power to tax belongs to the sovereignty. It can only be exercised by subordinate corporate body when delegated to it either by the constitution or the Legislature, and when so delegated, it must be exercised for those purposes only which are distinctly included in the constitutional or the legislative provisions. . . . Such power when so conferred 'is to be strictly construed and must be closely followed.'"

For all of the reasons discussed in the foregoing authorities, you are advised that it is the opinion of this department that oil companies, and their intangible assets and property, contemplated and coming within the provisions of Article 7105, supra, are not subject to a common school district bond tax on their intangible assets and property.

We trust that in this manner we have fully answered your inquiry.

                    Yours very truly

                ATTORNEY GENERAL OF TEXAS

                By s/Harold Mc Cracken
                    Harold Mc Cracken
                    Assistant

HM:db:wc


APPROVED JAN 5, 1942
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman