

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

June 21, 1965

Withdrawn by C-533

This Opinion
Overrules Opinion
# S-184
Where conflicts

Honorable Henry Wade
District Attorney
Records Building
Dallas, Texas

Dear Mr. Wade:

Opinion No. C- 458

Re: Several questions relat-
ing to levy and assessment
of ad valorem taxes by
Dallas County Junior
College District.

You ask the opinion of the Attorney General in answer
to the following five (5) questions relating to the levy
and assessment of ad valorem taxes by Dallas County Junior
College District:

1.  Can a valid contract for the assessment
    and collection of taxes be entered into
    by the Board of Trustees of Dallas County
    Junior College District and the County
    of Dallas for the Tax Assessor and
    Collector of Dallas County to assess and
    collect the taxes for the Junior College
    District?

2.  In the event that the answer to Question
    No. 1 is in the affirmative, what fees and
    commissions can the Tax Assessor and
    Collector of Dallas County legally charge
    the Dallas County Junior College District
    for the assessment and collection of the
    above referred to taxes?

3.  Can taxes be levied and collected for the
    year 1965?

4.  May the District tax intangible properties
    within its boundaries?

5.  Can the District assess and levy a tax on
    the rolling stock of a railroad or trans-
    portation company?

The relevant facts are as follows:  The Dallas County
Junior College District (hereinafter referred to as District)
was created on May 25, 1965, pursuant to the provisions of

-2177-

Article 2815h of Vernon's Civil Statutes. The boundaries of the District are coterminous with the boundaries of Dallas County. At the election, the voters elected a Board of Trustees of the District and granted them the authority to assess and levy a tax for the support and maintenance of the District and to issue bonds to be paid for by a tax which was also authorized.

We answer your questions in the order in which you ask them.

1.

Your first question asks if the District may contract with the Tax Assessor and Collector of Dallas County to assess and collect its ad valorem taxes. Our answer is that it may enter into such a contract pursuant to the provisions of Sec. 7b(c) of said Article 2815h. This Article in its relevant portions reads as follows:

> "When a majority of the Board of Education of such Junior College District prefer to have the taxes of their district assessed and collected by the County Assessor and Collector, or by the City Assessor and Collector of an incorporated city or town in the limits of which the Junior College District or a part thereof is located, or collected only by the County or City Tax Collector, same may be assessed and collected, or collected only, as the case may be, by said county or city officers, as may be determined by the Board of Education of said Junior College District, and turned over to the Treasurer of the Junior College District for which such taxes have been collected. . . ."

2.

Your second question asks what fees and commissions may be paid in the event we answer your first question in the affirmative. Our answer is that the following provision of said Article 2815h, Sec. 7b(c) sets forth these fees and commissions in the following language:

> ". . . When the County Assessor and
> Collector are required to assess and
> collect the taxes on Junior College
> Districts they shall respectively
> receive one (1%) per cent for assess-
> ing and one (1%) per cent for collecting
> same; . . ."

### 3.

Your third question asks whether the District can
levy and collect taxes for the year 1965. Our answer is
that it can.

Under the following authorities, the levy and assess-
ment of taxes by the District is governed by the same laws
governing taxation by independent school districts.

a) Section 7 of said Article 2815h provides, in part:

> ". . . The issuance of the bonds for
> Junior College purposes, and the pro-
> vision of the sinking fund for the retire-
> ment thereof, and the payment of interest
> and the levying of taxes for the support
> and maintenance of the Junior College,
> shall in so far as same is applicable,
> be in accordance with the general election
> laws and the laws governing the issuance
> of bonds and the levying of taxes in the
> Independent School District, . . ."

b) Section 7a of said Article 2815h (Acts 1937, 45th
Leg., p. 248, ch. 130, sec. 3) further provides, in part:

> "The Assessor and Collector of such
> Junior College District shall assess the
> taxes and collect the same in the manner
> now provided by law for the collection
> of ad valorem taxes by County Assessors
> and Collectors and where there is not
> herein contained any specific provision
> or direction as to how anything connected
> with the assessment and collection of
> taxes shall be done, then the provisions
> of the General Law shall prevail. . . ."

c) The case of Shepherd v. San Jacinto Junior College
District, 363 S.W.2d 742 (Tex.Sup. 1963), holds that Section

3 of Article VII of our State Constitution pertaining to taxation for benefit of schools and school districts is applicable to Junior College Districts.

Although the college district was not created until May 25, 1965, the district has the authority to levy and collect taxes for the year 1965 on all property within such newly created district which was owned by the taxpayers on January 1st. Blewitt v. Megargel County Line Ind. Sch. Dist., 285 S.W. 271 (Comm.App. 1926); Yorktown Independent School District v. Afferbach, 12 S.W.2d 130 (Comm.App. 1929); Cadena v. State, 185 S.W. 367 (Tex.Civ.App. 1916, error ref.).

The court in Blewitt v. Megargel, supra, stated:

> ". . . when an independent school district is created after the 1st of January of a given year, all property within such newly created district, which was owned by the taxpayer on January 1st of that year, is subject to any tax authorized by law, whether such taxes have been authorized there-tofore or may be authorized during the year, and can be levied by the body given the power to levy at any time during the year. . . ." (Underscoring added.)

Your fourth question asks whether the District may tax intangible properties within its boundaries.

We can only state the general principles of law relative to taxation of intangible properties. The question of whether particular intangible properties have a situs within the District must be determined by the laws relating to those particular properties.

In general, all properties, real and personal and tangible and intangible, having a taxable situs within the District are taxable by the District. Articles 7145 and 7153, Vernon's Civil Statutes; Texas & P. Ry. Co. v. City of El Paso, 126 Tex. 86, 85 S.W.2d 245 (1935); Texas Pipe Line Co. v. Anderson, 100 S.W.2d 754 (Tex.Civ.App. 1937, error ref., cert. den., 302 U.S. 724); Brown County, Texas v. Atlantic Pipe Line Co., 91 F.2d 394 (C.C.A. 5th 1937, cert. den., 302 U.S. 747).

## 5.

Your fifth question asks whether the District may assess and levy a tax on the rolling stock of a railroad or transportation company. Whether rolling stock has acquired a business situs in a county for ad valorem tax purposes must be determined from all the relevant facts. Many court decisions and opinions of the Texas Attorney General have considered and passed upon the various fact situations, and these may be referred to by you for your consideration of particular fact situations.

Your fifth question further asks whether the District may assess and levy an ad valorem tax on the rolling stock of a railroad company. Our opinion is that the apportionment of the value of railroad rolling stock allocated to Dallas County by the State Tax Board pursuant to Chapter 4 of Title 122, Vernon's Civil Statutes, may be taxed by the District. State v. Texas & P. Ry. Co., 62 S.W.2d 81 (Comm.App. 1933). This case holds that the value of railroad rolling stock apportioned to El Paso County acquired a fixed taxable situs in that county. The Court further held that the value of such rolling stock was taxable by a road district composed of El Paso County and the contiguous Hudspeth County because the Act under which the road district was created provided that ad valorem taxes should be levied "against the property in each of the counties, respectively." The Court then held with reference to this quoted provision:

> ". . . This language, in the connection used, plainly comprehends all property situated either actually or by operation of law, in any of the counties as such."

The Court then further stated that although Article 7105 authorized the intangible assets of companies therein mentioned to be taxed only for State and County purposes, that since the Legislature had authorized this road district to levy its taxes "against the property in each of the counties, respectively" that the rolling stock of the Railroad Company was subject to taxes by the road district. The Court stated that the reasons for its conclusion was that the situs of the rolling stock apportioned by the State Tax Board under Chapter 4 of said Title 122, to El Paso County had become

> ". . . fixed in the county at large, but not, of course, in any particular portion of the county."

In view of the foregoing authorities, we hold that the District may and should assess and levy its taxes upon the value of all railroad rolling stock apportioned by the State Tax Board to Dallas County.

In so far as prior opinion No. S-184 (1955) of the Attorney General conflicts with this opinion, it is hereby overruled.

## S U M M A R Y

Dallas County Junior College District, created pursuant to Article 2815h, V.C.S. on May 25, 1965, has the following powers:

1. It may contract with the Tax Assessor and Collector of Dallas County to assess and collect its ad valorem taxes.

2. The fees and commissions of such Tax Assessor-Collector for his services are 1% for assessing and 1% for collecting.

3. The District may levy and collect taxes for the year 1965.

4. The District may tax intangible properties within its boundaries under the general rules of law applicable to taxation of such properties.

5. The District may tax the rolling stock of a railroad or transportation company under the conditions stated in this opinion.

Yours very truly,

WAGGONER CARR
Attorney General

By W. E. Allen
W. E. Allen
Assistant

WEA:dl

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman
Gordon Cass
John Pettit
Jack Goodman
John Reeves

APPROVED FOR THE ATTORNEY GENERAL
By:  T. B. Wright

C-458 has been withdrawn and replaced by C-533